The further hearing of the cause was adjourned until the afternoon, to give the lessors of the plaintiff an opportunity of bringing in the money; and again until the following morning for the same purpose; but they not being able to effect it, the plaintiff suffered a nonsuit, the court reserving the point, in case his counsel should think proper to move it in bank.

The defendant under the courts recommendation, entered into an agreement to repay the 30*l.* and interest, to the lessors of the plaintiff on the 22d December following.

———————•◆◆•———————

JOSEPH HARDY *against* JOHN METZGAR.

No markets overt in Pennsylvania, for the sale of goods.

REPLEVIN for a dark brown gelding, riding chair, and harness.

The case was: The plaintiff keeping a livery stable in Philadelphia, on the 8th October 1796, hired to one Martin M'Coy (alias Patterson) the horse and chaise, (he pretending to visit his father-in-law at Sumny town, 30 miles from Germantown,) to be returned in a week certain. Instead of going to the appointed place, M'Coy pursued a different direction and came up to Middletown, in Dauphin county, where he publicly offered the horse and chaise for sale, and on the 13th Ooctober sold them openly to the defendant, an innocent purchaser, for 100 dollars. The horse was much abused, and the chaise and harness in a ruinous state, having been overloaded and overset in the journey. On the 24th October the plaintiff advertised the horse and chair, and offered a reward of 40 dollars therefor. Finding them afterwards in the defendant's custody, he proffered to the defendant his 100 dollars, but he refused to return the horse and chaise.

The defendant's counsel insisted that the *bonâ fide* sale divested the property, and cited 5 Term Rep. 175. If goods be obtained from A by fraud, and pawned to B without notice, and A prosecute the offender to conviction, and get possession of his goods, B may maintain trover for them.

The plaintiff contended, that this very point had been otherwise settled, on full argument in bank, between M'Kissock and Weaver; and moreover cited 40 Vin. 12, pl. 6. Godbo. 160. If A bails goods to B at such a day to rebail, and before the day B sells the goods in market overt, yet at the day, bailer may seize the goods, because the property was always in him and not altered by the sale.

The court said, it would not become them to suffer the matter to be again debated, after a solemn adjudication by all the judges that there are no markets overt in Pennsylvania. It was of importance, that the law should not be doubted in such cases; and that persons in general should be careful, how they purchased personal property from strangers. In these instances "*caveat emptor*" (2 Stra. 1187) is and ought to be the rule, since no one can transfer a greater right to articles, than he himself has. The case cited by the defendant is not very clearly reported. It must be taken for granted, that the goods there were obtained in such a manner, as that between strangers it would amount to a sale, because it has been adjudged, that there is no market overt in London for pawning. Ib. 3 Atky. 44. 1 Wils. 8. The plaintiff here is only entitled to the value of the horse, chaise and harness, as it was when they came to the defendant's hands.

Verdict *pro quer.* for 112 dollars.

Messrs. Fisher and Hall, *pro quer.*
Messrs. Hopkins and Elder, *pro def.*