[PHILADELPHIA, MARCH 29, 1833.]

## MARSH *against* PIER.

### IN ERROR.

In replevin, where the defendant pleads "property," there is still such a burthen of proof on the plaintiff, as to entitle him to commence and conclude to the jury. But

*It seems,* that if the court below had ruled differently, it would not have been cause for reversal on writ of error. (Per KENNEDY, J., *the rest of the court giving no opinion on the point.*)

A verdict and judgment between the same parties or their privies, on the same subject-matter, though in a different form of action, is admissible and conclusive.

Therefore, if *P.* brings an action for the price of goods against *N.*, the record of the judgment is admissible and conclusive on the issue of property in replevin for the same goods, brought by *P.* against a purchaser under *N.*; and this, whether the judgment be for the plaintiff or the defendant in the first action.

An action for the price of goods, when prosecuted to judgment, is an affirmance of the sale; and the right to make such a sale cannot afterwards be gainsaied.

It is not necessary to plead the former judgment, to make it either admissible or conclusive.

A bill of particulars, if proved to be genuine, is evidence to show the precise subject-matter of an action.

On an issue taken in replevin on the plea of property, a general judgment for the plaintiff with damages, without specifying the value of the goods, *eo nomine,* is good. (Per KENNEDY, J., *the rest of the court giving no opinion on this point.*)

THIS was a writ of error to the District Court for the City and County of *Philadelphia.*

*Sylvester Pier,* the plaintiff below and defendant in error, declared in *replevin* for ninety-seven tons of *Campeche* logwood, taken and unjustly detained by the defendant, *James Marsh,* to which the defendant pleaded " property." The plaintiff replied, and issue was joined. The cause was tried at *June* term, 1832, and a verdict and judgment rendered for the plaintiff, for three thousand and forty-seven dollars and thirty-nine cents damages, and six cents costs. On the trial, the following facts appeared in evidence :

The plaintiff was, in the month of *October,* 1828, owner of the brig *Sally Barker,* of which Captain *John H. Marshall* was master. The brig was built in the year 1809, at *Duxbury, Massachusetts,* and was purchased by the plaintiff on the third of *June,* 1828, for one thousand dollars. On the twenty-seventh of the same month, she sailed from *New York* to *Tabasco,* consigned to *P. N. Paillet,* with a cargo of copper. By letter of instructions, the captain was directed to consult the consignee on his arrival, and the consignee was instructed to remit the proceeds of the shipment in logwood. On the arrival of the brig at *Tabasco,* a quantity of logwood was put on board by order of the consignee, on account of the plaintiff. Captain *Marshall* refused to sign the bills of lading. On the eleventh of *September,* 1828, the brig sailed from *Tabasco* for *New York,* and after being at sea three or four days, her course was altered, and in con-

sequence, as was contended by the defendant, of her being leaky and unfit to continue her voyage, she went to *New Orleans*, where she was regularly surveyed, condemned, and sold.

The wood was sold at *New Orleans* by *W. Nott & Co.*, under the instructions of the captain, to *S. P. Morgan & Co.*, without notice to them, at seventeen dollars and fifty cents per ton; the proceeds of the sale were one thousand seven hundred and nine dollars and sixty-five cents. It was shipped on board the barque *Hercules*, consigned to *C. Price & Morgan*, at *Philadelphia*, and by them sold to the defendant, who bought without notice and *bona fide*, at twenty-six dollars per ton, cash, or two thousand five hundred and twenty-two dollars and seventy cents. At the time of the sailing of the *Hercules* from *New Orleans*, there were vessels waiting for freight to *New York*. By the account current of *Nott & Co.*, with Captain *Marshall*, a balance appears in his favour of one thousand and eighty-six dollars and twenty-five cents, and on the 22nd of *October*, 1828, he is credited with their draft at sixty days sight, on *F. Depau*, for one thousand one hundred dollars. On the 4th of *October*, 1828, *W. Nott & Co.* advised the plaintiff, by letter, of the sale of the brig and cargo, which letter was received on the 1st of *November*. On the 27th of *October*, 1828, *W. Nott & Co.* addressed a letter, with account sales and account current, to the plaintiff, and advised him of their draft on *Depau*. On the 1st of *December*, 1828, the plaintiff wrote to *W. Nott & Co.*, acknowledging the receipt of their letters of the 4th and the 27th of *October*, with the accounts, and disaffirming the sale at *New Orleans*. The condition of the brig at *New Orleans* was proved by witnesses, examined under commissions to *New Orleans*. ·Charges for freight, &c. on the wood from *New Orleans* to *Philadelphia* were also proved.

On the 1st of *November*, 1828, the plaintiff served a notice on the captain of the *Hercules*, and on *C. Price & Morgan*, claiming the logwood as his property. The sale by *C. Price & Morgan*, to the defendant, Mr. *Marsh*, was in the latter part of *November*, and the *replevin* issued the 27th of *November*, 1828.

The correspondence of the plaintiff with the consignee, Captain *Marshall* and *W. Nott & Co.* were read to the jury by the defendant.

The defendant also offered to show that the plaintiff, at *October* term, 1829, brought an action in the Superior Court of the city of *New York*, against *W. Nott & Co.*, to recover the value of the logwood, &c. on board the brig *Sally Barker*, and in his declaration counted against *W. Nott & Co.* as his agents, in which action judgment was rendered for the defendant.

After the jury had been sworn, the defendant's counsel claimed, as their right on the pleadings, to commence and conclude; this was refused by the court, and constitutes the first exception.

The plaintiff below in the course of his testimony offered in evidence the deposition of *Charles Rust*, taken under a commission to

(Marsh *v.* Pier.)

*New York*, in the course of which the witness testified as follows : " When the logwood was all on board, deponent handed bills of lading to Captain *Marshall*, and requested him to sign them, to which Captain *Marshall* replied, ' he would be damned if he would,' and refused to sign them, and kept them, and deponent never saw them again." To this portion of the deposition, the defendant's counsel objected, but the objection was overruled.

The defendant, among other things, offered to read in evidence a regular exemplification of the record of a suit in the Superior Court of the city of *New York*, in which *Sylvester Pier* was plaintiff, and *W. Nott & Co.* defendants, in which judgment was rendered for the defendants. (The subject of this action is particularly stated by Judge KENNEDY, in delivering the opinion of this court.) To this the plaintiff's counsel objected, and the objection was sustained.

The defendant's counsel then offered the same record in conjunction with a bill of particulars, purporting to apply to the general counts of the declaration in the *New York* suit. This was also rejected.

The defendant's counsel requested the court to instruct the jury as follows :

1st. That in consequence of the plaintiff receiving intelligence of the sale of his logwood at *New Orleans*, on *November* 1st, 1828, and not disaffirming it, and disavowing the agency of the master till 1st of *December*, 1828, when he wrote to that effect to *Nott & Co.*, he in law affirmed the agency of the master and the sale, and ought not to recover in this action.

2d. That the plaintiff was bound in law, immediately on receiving *W. Nott & Co.*'s letter of *October* 27th, 1828, to give notice to *F. Depau* of *New York*, on whom they had drawn at sixty days sight for the balance of the proceeds of the logwood, and to stop the payment of the said draft, and that having neglected to do so, he was barred of his recovery in this action.

3d. That in case the jury should be of opinion that the plaintiff was entitled to recover the value of the logwood, according to the sales to the defendant at *Philadelphia*, the defendant was entitled to a deduction for freight from *New Orleans* to *Philadelphia*, and charges.

On these points the judge charged the jury :

1st. That the plaintiff was not bound to disaffirm the agency and sale sooner than he did, but if he delayed writing to *Nott & Co.* till the 1st of *December*, 1828, in order to be apprised of all the circumstances of the agency and sale, and then disavowed them, and did not merely stand by in order to make up his mind, he was in time.

2d. That the plaintiff was not bound to give notice to *F. Depau*, or stop the draft.

3d. That the defendant was not in law entitled to any allowance or abatement for freight or charges, but there being something like equity in it, they might make the allowance or not as they pleased. To all these instructions the defendant's counsel excepted. Besides

(Marsh *v.* Pier.)

the above exceptions, error was assigned in the form of the verdict and judgment, which were generally for the plaintiff, with damages and nominal costs.

*W. B. Reed* and *W. M. Meredith*, for plaintiff in error.

1. In *replevin*, where the plea is property, the defendant is entitled to commence and conclude, because he has the affirmative of the issue. The plaintiff in his narr. alleges caption and unlawful detention. The defendant's plea does not deny the caption or detention, but alleges a right of property, which the plaintiff in his replication denies. The issue is then on the plea of property, and on that issue the defendant is first in affirmative. The first disputed affirmation, is the defendant's of property in himself. No express authority is to be found in the books, but there are some cases, strongly analogous. In a note to 15 *Petersdorff, C. L. Ab.* 163, it is laid down, that whoever adds, the *similiter* begins. In a writ of right, where issue is on the mere right, the tenant, and not the demandant begins. *Heidon & Ibgrave's case*, 3 *Leon.* 162. *Gilbert's Evid.* 145. *Trials per pais*, 36-7. So in an action of covenant, and a plea ' covenants performed.' *Norris* v. *N. Am. Insurance Company*, 3 *Yeates*, 84. 86 :—so *Delaney* v. *Regulators of City*, 1 *Yeates*, 403; so in trespass where the plea is ' *liberum tenementum.*' *Leech* v. *Armitage*, 2 *Dall.* 125. So where in trespass, *quare clausum fregit*, the defendant pleads as to part, not guilty, and as to the residue, justification under a right of way. 3 *Starkie on Evi.* 385. 377. *Roscoe on Evid.* 132. If the plea be ' property in a stranger,' it may either be pleaded in bar or abatement. *Bull. N. P.* 54. And where issue is taken on the plea in abatement, defendant begins. 3 *Starkie's Ev.* 385. But there is one express authority. Where in *replevin* the taking is admitted, and the affirmitive of every issue lies on the defendant, as where he pleads *liberum tenementum* in trespass, his counsel are entitled to begin and reply. 4 *Starkie on Evid.* 1295. It is not the mere order of addressing the jury which is claimed, which was the case in *Robeson* v. *Whitesides*, 16 *Serg. & Rawle*, 320, but it is the order of giving evidence, and it is not *damnum absque injuria*. Safe principles are laid down in *Snyder* v. *Bauchman*, 8 *Serg. & Rawle*, 336. The court has a right to make rules conformable to the law of the land, but no further.

2. The declarations of Captain *Marshall* to *Charles Rust*, were not evidence on any principle. They were hearsay clearly, and as such inadmissible. His refusal to sign bills of lading was a fact, but what he said was a declaration only calculated to prejudice the jury. But besides, it was irregular to introduce this evidence at the time it was offered.

3. The record of the suit in *New York*, ought to have gone to the jury. Its effect, if admissible, is a secondary question, but it was both admissible and conclusive. The defendant, *Marsh*, is a *bona fide* purchaser, without notice, from the plaintiff, through the agency of *Nott & Co.* at *New Orleans*, which agency the plaintiff in this suit dis-

(Marsh *v.* Pier.)

avows. In the suit in *New York*, relating to the same subject-matter, the logwood, the plaintiff counts against *Nott & Co.* as his agents, and seeks to recover the price of this very logwood. As the record of a suit and judgment between the same parties or their privies, on the same cause of action, it is admissible and conclusive, whether pleaded or not. The authorities are clear on this point. *Ferrer's Case,* 6 *Rep.* 7 *S. C. Cro. Eliz.* 668. *Sparry's Case,* 5 *Rep.* 61. *Hitchin* v. *Campbell,* 2 *W. Bla.* 827. 3 *Wilson,* 308. *Kinnersley* v. *Orpe,* 2 *Doug.* 517. *Calhoun* v. *Dunning,* 4 *Dall.* 120. *McKinney* v. *Crawford,* 8 *Serg. & R.* 351. *Stokely* v. *Alexander,* 7 *id.* 299. It is not necessary that parties nominally should be the same, or that the judgment be pleaded. *Heydon's Case,* 11 *Rep.* 5, 6. *Co. Lit. B.* 3. sect. 376. *n.* 144. (2 *Thomas's Coke,* 129.) *Hostetter* v. *Kauffman,* 11 *Serg. & Rawle,* 146. *Bird* v. *Randall,* 3 *Burr.* 1353. Where both actions appear on the record to be for the same thing, the court will not put a party to plead. *Garvin* v. *Dawson,* 13 *Serg. & Rawle,* 247. *Cist* v. *Zeigler,* 16 *Serg. & Rawle,* 282. *Estep* v. *Hutchman,* 14 *id.* 435. *Floyd* v. *Brown,* 1 *Rawle,* 125. 8 *Wendell,* 1. In this case, the court held, that a judgment in an action of trespass for carrying away goods, is a bar to an action of *indebitatus assumpsit* for the proceeds of the sale of the goods which were the subject of the trespass. In *Lamine* v. *Dorrell,* 2 *Ld. Raym.* 1216, a former judgment in *assumpsit* was held to be a bar in trover. So in *Stafford* v. *Clark,* 2 *Bingham,* 377. (9 *C. L. Rep.* 437.) In an action for money had and received, the plaintiff goes only for money received, and so far confirms the defendant's act, as that he cannot gainsay his right to receive it. *Eastwick* v. *Hugg,* 1 *Dall.* 222. On these authorities it is contended, that as between these parties or their privies, this record was competent evidence whether as a bar to this action, or as a fact showing a confirmation of the agency of the master and of *Nott & Co.* and that too without its being pleaded.

4. The rejection of the record by the court below, rendered the offer in evidence of the bill of particulars, nothing but a formal offer. This point need not be pressed.

5. and 6. On these points and the principle involved in them, that a principal ought, as soon as he is informed of the unauthorized act of his agent, to disaffirm it, and if he does not, that he cannot recover against a *bona fide* purchaser without notice, the following authorities were cited. *Ward* v. *Evans,* 2 *Salk.* 442. 2 *Starkie's Ev.* 58. A principal is bound to disavow the unauthorized act of his agent, the first moment it comes to his knowledge, says C. J. GIBSON, in *Bredin* v. *Dubarry,* 14 *Serg. & R.* 30. See also 1 *Fonblanque Eq.* c. 3. s, 4. p. 161. 2 *Vernon,* 151. *Hansdon* v. *Cheyney,* 1 *P. Wms.* 393. *Mocatta* v. *Murgatroyd,* 1 *Vernon,* 136. *Hobbs* v. *Venter,* 1 *Vesey,* 95. *Arnott* v. *Biscoe,* 2 *Bro. Ch. Rep.* 420. 13 *Serg. & Rawle,* 306. 3 *Serg. & Rawle,* 283.

7. If the amount of the sales at *New Orleans* be the measure of damages, then the defendant is entitled to no abatement for freight

(Marsh *v.* Pier.)

and charges; but the jury having taken as the measure, the sales at *Philadelphia,* such an allowance ought to be made. Case of *The Fanny,* 9 *Wheaton,* 658. A *bona fide* purchaser from a piratical captor is entitled to freight for carrying goods, though it be out of the direct line of the voyage.

8. The judgment should not have been general, for the plaintiff with damages, but distinctly for the value of the goods, and damages for the detention. The plaintiff is entitled to a return of the property or its value, and if so, the defendant has a right to make a return in specie with damages for the detention, which he cannot do under this judgment. The gross amount of three thousand and forty-seven dollars and thirty-nine cents, includes both the equivalent for the goods and the damages, which the court cannot separate. It has been decided in this state, that such a general judgment is error. *Easton* v. *Worthington,* 5 *Serg. & Rawle,* 130. In a verdict for the plaintiff in *replevin* on the plea of property, the jury should find the value of the goods *and* assess the damages for detention. *Warner* v. *Augenbaugh,* 15 *Serg. & Rawle,* 9. 6 *Com. Dig.* 3. *k.* 30. *Co. Litt. B.* 2, cap. 12, sect. 219. *Note.* 1456. Also, *Coke's Entries,* 610–611.

*J. R. Ingersoll* and *Chauncey,* for the defendants in error.
1. The order of addressing a jury is a matter purely within the discretion of the court below, whose decision upon it is not the subject of error. Even if it be otherwise, the court below were right in their decision. The action of *replevin* is peculiar ; for though on the plea of property, the defendant is strictly the first in the affirmative, yet there is a burthen of proof on the plaintiff. 6 *Harris & Johnson,* 499. In this case the actual burthen of proof was on the plaintiff. *Gilbert on Replevin,* 98. 100. 126. 6 *Bacon's Ab.* 53. 65. 73.

2. In regard to Captain *Marshall's* declarations, it is only necessary to say, that his refusal to sign the bills of lading, being proved as a fact, renders it unnecessary to prove the manner and language in which he did it. But besides, the defendant below is here acting under Captain *Marshall,* and privy with him.

3 and 4. As to the record of the suit in *New York* ; it ought to be the whole record, which this is not, as there is no *capias* or return ; they ought to be set out at length. *Bull. N. P.* 223. 227. It ought to have been pleaded or offered in evidence on notice. *Gould's Pleading,* 336. In all the cases cited by the plaintiff in error, where the former judgment was relied on as a collateral bar, it it was pleaded ; in all others it was between the same parties, and on precisely the same subject-matter. In *Hostetter* v. *Kauffman,* 11 *Serg. & Rawle,* 146, it was agreed not to plead the record. In *Bird* v. *Randall,* 3 *Burr.* 1353, and in *Cist* v. *Zeigler,* 16 *Serg. &. Rawle,* 282, the parties in the two suits were the same. In *Hitchin* v. *Campbell,* 2 *W. Bl.* 827, and in *Floyd* v. *Browne,* 1 *Rawle,* 125, it was pleaded. See also, 1 *Tidd,* 703, last edition. The rule strictly confines the admission of such records to decrees or judgments be-

(Marsh *v.* Pier.)

tween the *same parties* on the *same subject-matter*. No one can be bound by a verdict or judgment to which he was a stranger, which may have resulted from the negligence of another, or been procured by fraud or collusion. 2 *Starkie's Ev.* 185, 6. The judgment of a competent tribunal, is not evidence of any matter to be inferred by argument from the judgment. *Id.* 190-1, 195-6, 198-9. The former judgment must be final and conclusive. 4 *Starkie's Ev.* 205. The judgment in the *New York* suit, wanted nearly all these requisites. 1 *Phillips's Ev.* 230. 142. 4 *Starkie's Ev.* 1278. The bill of particulars here was not proved, and we have no mode of ascertaining whether it is genuine or not. Until it is proved, there is no mode of ascertaining whether the former judgment related to the *same subject-matter*.

5. and 6. As to the disaffirmance of the agency, and the want of notice to *F. Depau. Nott & Co.*, were not entitled to notice, and if they were, it should be remembered that the letter of the 4th of *October*, 1828, promised an account sales for which the plaintiff had a right to wait without disaffirming the sale. 1 *Livermore*, 50. 12 *Johns.* 300, does not fully bear out the point stated by *Livermore.* 1 *Johns.* 110. 1 *Caines*, 539. 589. *Curcier v. Ritter*, 4 *Wash. C. C. Rep.* 553. 569. For what purpose the principal waited before disaffirming the agency, is a question for the jury. But besides, there was notice on the 1st of *December*, to *C. Price & Morgan*, and to Captain *Longcope.* As to notice to *Depau*, the plaintiff was not called on to give it; indeed if he had, it would have looked like an affirmance of the agency. Suppose the draft had been negociated, as it probably was, what would be the effect ?

7. As to the allowance of freight and charges, the case of *The Fanny*, 9 *Wheaton*, 658, is a peculiar case of prize law. The logwood was not chargeable with freight, as no freight was paid on it, (the *Hercules* belonging to *C. Price & Morgan*,) and was brought to a place in *Philadelphia*, where the plaintiff had no occasion for it, and did not want it. They cited also *The Leander*, 5 *Rob. Adm. Rep.* 67. And *The Vrow Anna Catharina*, 6 *Rob.* 271.

8. As to the form of the judgment, the case of *Easton* v. *Worthington*, 5 *Serg. & Rawle*, 130, cited on the other side, is conclusive in our favour. See also, *Hosack* v. *Weaver*, 1 *Yeates*, 478. *Hardy* v. *Metzgar*, 2 *Yeates*, 347.

The opinion of the court was delivered by

KENNEDY, J.—This was an action of *replevin*, and was commenced on the 27th of *November*, 1828, in the District Court for the City and County of *Philadelphia*, by the defendant in error, against the plaintiff in error, for the recovery of ninety-seven tons of logwood, claimed by the plaintiff below as his property, to which the defendant there, by his plea, put in on the 25th of *March*, 1829, also asserted his right of property. Issue was joined on the plea of property alone, after which the cause was tried by a jury, on the 21st day of *April*,

1832, and a verdict given in favour of the plaintiff for three thousand and forty seven dollars thirty-nine cents damages, upon which the court rendered a judgment in favour of the plaintiff, for the amount of the damages so found by the jury, and his costs.

On the trial of the cause in the District Court, the plaintiff there, in order to establish his right of property in the logwood, gave in evidence, that in the beginning of *September*, 1828, it was purchased of the owners thereof for him at *Tabasco*, and put on board of his vessel, the brig *Sally Barker*, then at that place, and under the care of *John H. Marshall*, employed by *Sylvester Pier*, the plaintiff below, as the captain and master of the brig, to bring her with the cargo to the city of *New York*, where the plaintiff then resided. Three or four days after the captain sailed from *Tabasco*, with the logwood as his cargo, he fraudulently, as was alleged by the plaintiff, and under a false pretence of the brigs' being leaky and unfit to make the passage good to *New York*, changed his course and went to *New Orleans*. There he had a survey made of the vessel, which was condemned. He placed her with the logwood, under the authority of *William Nott* and *John Parker*, commission merchants at that place, to be sold by them. The logwood weighing in all, ninety-seven tons thirteen hundred three quarters and fourteen pounds, was sold by these gentlemen to *Samuel P. Morgan & Co.*, at seventeen dollars and fifty cents per ton, who transmitted it by the barque *Hercules* to *Philadelphia*, consigned to Messrs. *C. Price & Morgan*, of that place. It arrived there about the 28th of *October*, 1828, and about five weeks afterwards was sold by these last named gentlemen to the defendant below, *James Marsh*, at twenty-six dollars per ton cash. On the 30th or 31st of the same *October*, *Sylvester Pier*, the plaintiff, residing still at *New York*, received a letter from *William Nott & Co.* advising him of their having sold the logwood, at seventeen dollars and fifty cents per ton cash, and of the disposition made of the proceeds thereof by them. On the first day of *November*, then next following, *Sylvester Pier*, having come to *Philadelphia*, found the logwood there on board of the barque *Hercules*, and immediately caused a written notice to be given to *William Longcope*, the captain of the *Hercules*, and likewise to Messrs. *Price & Morgan*, that he claimed the logwood as his property, and at the same time demanded the delivery of it, and forbade them to dispose of it to any other, as he would hold them responsible to him for it.

The defendant below, on the trial of this cause, in order to sustain his plea, among other things, offered to read in evidence to the jury the exemplification duly certified, of a record of a judgment rendered in the Superior Court of the city of *New York*, in favour of *William Nott* above named, in a suit brought by *Sylvester Pier*, the plaintiff below in this case, against him and *John Parker*, above named, the latter of whom was returned by the sheriff upon the writ of *capias ad respondendum*, commencing the suit, " not found." The cause of action as set forth in this exemplification is contained in nine counts,

(Marsh *v.* Pier.)

the first of which, after stating that *William Nott* and *John Parker,* as the agents of the said *Sylvester Pier,* took possession of the vessel, called the *Sally Barker,* and cargo, consisting of one hundred tons and upwards of logwood, of the value of three thousand dollars, for the purpose of taking care of and preserving the same for the said *Sylvester Pier,* and in consideration of a reasonable reward to be paid to them, they undertook and promised the said *Sylvester Pier,* to take care of the vessel and cargo, to keep the same safely for him, and to deliver the said vessel and cargo to him, when they should be thereunto afterwards required; yet the said *Nott* and *Parker,* did not take due and proper care of the said vessel and cargo, or either of them, or any part thereof, or deliver the same to the plaintiff, but on the contrary, without necessity or justifiable cause, and contrary to their duty and promise, and against the will of the plaintiff, on the 10th day of *October,* 1828, at *New Orleans,* caused the said vessel and cargo to be sold, whereby the said vessel and cargo became and were *wholly lost* to the said *Sylvester Pier.*

The second and third counts, are for breaches of promises nearly of the same import as in the first count, except that it is not alleged that the defendants sold the vessel and cargo.

The fourth count, is upon a promise stated to have been made by the defendants to the plaintiff, that they in consideration of his having delivered to them, at their request, the logwood, of the value of three thousand dollars, and having made a promise to pay them a reasonable reward, would take care of the logwood and reship it at *New Orleans* on board of some vessel bound for *New York,* for and on account of the plaintiff, which they failed to perform, whereby he lost the whole of it.

The fifth count, is for a breach of promise in respect to the vessel alone, which is alleged to be of the value of two thousand dollars.

The sixth count, is upon a promise stated to have been made by the defendants to the plaintiff, to account to him for divers goods and merchandizes belonging to him, of the value of five thousand dollars, delivered to them at their request by the plaintiff, to be sold and disposed of by them for him, and which they accordingly sold at *New Orleans,* on the 20th of *October,* 1828, amounting in the whole, to five thousand dollars, but failed to account for the same.

The seventh count, is for a breach of promise to account for other goods of the value of five thousand dollars, put into the hands of the defendants by the plaintiff.

The eighth count, is upon a promise to pay five thousand dollars lent, five thousand dollars paid, laid out and expended, and the like sum had and received.

The ninth and last count, is upon an account stated, in which it is averred, that the defendants were found indebted to the plaintiff in other five thousand dollars.

To this exemplification being read in evidence to the jury, the counsel for the plaintiff below objected; and the court thereupon

(Marsh *v.* Pier.)

overruled the evidence; to which opinion of the court, the defendant below excepted and has assigned it here, as the ground of his third error.

The defendant below, then offered to read in evidence to the jury, the same exemplification in connexion with a writing purporting to be a bill of particulars, drawn up in the following terms, to wit:

"*Sylvester Pier* v. *William Nott* and *John Parker.* Bill of particulars of the plaintiff's demands under the sixth, seventh, eighth and ninth counts of his declaration, reserving to himself the right to recover damages under all or any of the preceding counts.

"1828. *October* 3rd. Value of the brig *Sally Barker*, John H. Marshall master, her sails, rigging, tackle and furniture, arrived at *New Orleans* from *Tabasco*, and put under the defendants' care and control at *New Orleans*, at or about this date, to be sold and disposed of by the defendants, and to be accounted for by them to the plaintiff,    $1500 00

"One hundred tons of logwood, which arrived in the said vessel and composed her cargo, also put into the hands of the defendants, or under their care and control, to be sold and disposed of, and to be accounted for by the defendants to the plaintiff.    Value of the same at twenty-eight dollars per ton,    $2800 00

"*October* 10th. Cash received by the defendants for 97 tons 13 wt. 3 qrs. 14 lbs. logwood belonging to the plaintiff, and sold by the defendants to *S. P. Morgan & Co.* at *New Orleans*, at $17 50 per ton,    $1709 65

"*October* 20th. Balance of account, stated and rendered by the defendants to the plaintiff, dated *New Orleans*, 20th *October*, 1828, being account of sales, and nett proceeds of logwood, received by the brig *Sally Barker* from *Tabasco*,    $1589 42

"*October* 22nd. Cash received by the defendants from sales of the hull, masts, sails and rigging of the brig *Sally Barker*, belonging to the plaintiff,    $441 88

"Money had and received by the defendants, at *New Orleans*, to and for the use of the plaintiff,    $2020 25

"Balance of an account, stated by the defendants, to and with the plaintiff, dated *New Orleans*, 22nd *October*, 1828,    $2020 25

"Interest on the above sums respectively,

"*W. T. M'Coun*,
"Attorney to the plaintiff."

(Marsh *v.* Pier.)

The reading of the exemplification in connexion with this bill of particulars in evidence to the jury, was also objected to by the plaintiff's counsel, and the evidence overruled by the court, and exception taken thereto by the defendant below, which is the ground of his fourth error assigned.

As the first, third, fourth and eighth errors assigned are all that I intend to notice, by giving my own opinion on the first and eighth, and that of this court on the third and fourth, it is deemed unnecessary to state further the proceedings had on the trial of the cause in the court below.

Upon the first, second, fifth, sixth, seventh and eighth errors, which embrace all that have been assigned after the third and fourth, this court, owing to the great press of business and want of time, have come to no settled conclusion, but thinking it probable that the opinion which they have formed on the question involved in the third and fourth errors may determine this case finally, have therefore thought it advisable to deliver it, that there may be no unnecessary delay in having an end put to the controversy.

The first error assigned, is, that the District Court refused to permit the counsel of the defendant below to commence and conclude the argument to the jury after the testimony on both sides was closed. It has been contended, that as the only plea put in and relied on by the defendant is that of property, which is purely affirmative, he was therefore entitled to the conclusion in summing up and addressing the jury. Although in most cases where the defendant pleads merely an affirmative plea, he is, by the course of practice, entitled to the conclusion, because generally it throws upon him the *onus probandi,* yet the plea of *property,* as I apprehend, does not produce this effect in the action of *replevin.* The plaintiff, I think, must, notwithstanding, first prove that he has a right to maintain his writ of *replevin,* by showing that he has either an absolute or special property in himself. *Co. Litt.* 145. *Bul. N. P.* 52. In this respect, the action of *replevin* is different from trespass, which may be supported against any one who has no right, by him who has the possession. *Waterman* v. *Robinson,* 5 *Mass. R.* 303. Hence property in a stranger is pleadible in *replevin* either in bar or in abatement. *Salk.* 5. 94. *S. C. Ld. Raym.* 984. *Cro. Jac.* 519. *Carth.* 243. 6 . *Mod.* 69. 81. 103. , 2 *Lev.* 92. 1 *Ventr.* 249. *Gilb. on Rep.* 127-8. So if the defendant plead property in himself in abatement, he does not thereby confess the caption, but only shows that the plaintiff hath not a right to the deliverance. *Gilb. on Rep.* 127. And more especially must this be so in *Pennsylvania,* where the action of *replevin* may be maintained by the plaintiff to recover the possession of goods and chattels to which he is entitled as owner in all cases, as well where the defendant came by the possession of them lawfully, and withholds it from the plaintiff unlawfully, as where he got it tortiously ; and consequently the plea of property, although it be the only plea put in by the defendant, cannot be considered as an admission by him that the

plaintiff ever had possession of the goods so as to give him even the colour of title, much less the right of property, to enable him to support his action.    In *Clemson* v. *Davidson*, 5 *Binn.* 399, which was an action of *replevin*, where the defendant pleaded property, the late Chief Justice of this court says, " it is true, that notwithstanding his (the defendant's) plea, it is necessary for *Clemson*, (the plaintiff,) to show property in himself." Seeing then, that the burthen of proof still lies upon the plaintiff in *replevin*, notwithstanding that the defendant relies solely on the plea of property, I am inclined to think that the order of the court below was in conformity to the rule of practice in this particular.    But had it been otherwise, I am not prepared to say that it would have been good cause for reversing the judgment upon writ of error.

The third error assigned, is, in the decision of the court below refusing to admit in evidence the exemplification of the record of the judgment rendered in the Superior Court of the city of *New York*, which was offered for that purpose by the plaintiff in error.    This court is clearly of opinion, that it ought to have been admitted in evidence, and that the court below erred in rejecting it.    It was offered in evidence by the defendant below, to show that the right or title of the plaintiff below to the logwood in question in this action, was decided against him upon the trial of a suit in the Superior Court of the city of *New York*, which was commenced and prosecuted therein by him against *William Nott* and *John Parker*, from whom the defendant below claimed to derive his right of property to the logwood, by means of a sale made of it by *Nott* and *Parker* as the agents of the plaintiff below.

From this exemplification of the record of the judgment of the Superior Court of the city of *New York*, it is manifest that the value or price of the logwood which forms the subject-matter of the dispute in this action, was a part of the claim of the plaintiff below in his suit against *William Nott* and *John Parker*, in that court.    They sold the logwood to *Samuel P. Morgan & Co.*, who shipped it on board of the barque *Hercules* consigned to *C. Price & Morgan* at *Philadelphia*, who sold it again to the plaintiff in error.

Now, as the sale of the logwood by *Nott* and *Parker* at *New Orleans*, when, as is admitted by both parties, it was the property of *Sylvester Pier*, and avowedly sold by them as such, are facts alleged and admitted on both sides in this action, it necessarily follows, that on the trial of the cause in the Superior Court of the city of *New York*, either the authority of *Nott* and *Parker* to make this sale, and that they had faithfully accounted to *Pier* for the proceeds thereof, must have been established to the conviction of the court and jury, or otherwise, if made without legal authority, that they had satisfied *Pier* for his claim and loss of property in the logwood, in some way, so that he was not entitled to recover of them in that action.    And it appears to me, that being decided against *Pier*, on either of these grounds, he was thereby precluded from the further maintenance of

this action. In short, I am unable to perceive any ground upon which that action could have been determined, as it appears from the exemplification of the record to have been, that would not have made it a bar to the further prosecution of this suit by him. The *evidence* to support both actions was the *same;* that being so, the cause of action must be the same, notwithstanding the actions are grounded on different writs. This was held in *Kitchen* v. *Campbell, 3 Wils. Rep.* 308, to be the test by which we are to ascertain whether a final determination in a former action is a bar or not to a subsequent action; and it is there said, that this principle runs through all the cases in the books, both in real and personal actions. It was resolved in *Ferrers' Case,* 6 *Co.* 7, "That when one is barred in any action, *real,* or *personal,* by judgment upon demurrer, confession, verdict, &c. he is barred as to *that,* or the like action of the *like nature* for the same thing forever," for *expedit reipublicæ ut sit finis litium;* which is also supported by another maxim, *nemo debet bis vexari, si constet curiæ quod sit pro una et eadem causa. Sparry's Case,* 5 *Co.* 61. In *Slade's Case,* 4 *Co.* 946, it was held, that a judgment in an action of *debt* was a bar to an action of *assumpsit* brought on the *same contract.* In *Barwell* v. *Kersey et al,* 3 *Lev.* 179, it was decided, that a former action of trespass by the plaintiff against the defendants was a bar to a subsequent action on the *case,* for the *same cause.* Also in *Kitchen* v. *Campbell,* 3 *Wils.* 308-9. *S. C.* 2 *Bl. Rep.* 827, it was ruled, that a judgment rendered in favour of the *defendant* in a former action of *trover,* was a bar to the plaintiff's recovery in a subsequent action of *assumpsit* for money had and received for the plaintiff's use, from a sale made of the *same goods* by the defendant. In like manner a judgment rendered for the *defendant* in *trespass de bonis asportatis,* was determined to be a bar to the plaintiff's recovery in a subsequent action of *assumpsit* to recover the money received by the defendant as the price of the *same goods* upon a sale made of them by him. *Rice* v. *King,* 7 *Johns.* 20. The principle settled by these, and many other cases, is, that the plaintiff cannot have a second investigation of the same *original matter* when it has passed once *in rem judicatam.* And this is in conformity to the rule laid down and deduced by the judges from the cases on this subject in the *Dutchess of Kingston's Case,* 20, *State Trials,* 535, " that the judgment of a *court of concurrent jurisdiction directly upon the point,* is as a plea, a *bar,* or as evidence *conclusive,* between the *same parties* upon the *same matter directly in question in another court.*"

From the same cases, as well as others, it may be seen, that the plaintiff may frequently at his election, bring either trespass, trover, *replevin, detinue* or *assumpsit,* to recover compensation for the loss of his goods. *Feltham* v. *Tyrrel, Lofft's Rep.* 207. 320. *Lamine* v. *Dorrell,* 2 *Ld. Raym,* 1216. *Lindon* v. *Hooper, Cowp.* 419. 20 *Vin. Abr.* tit. Trespass, page 540, and the cases there referred to. And if the plaintiff elects to bring an action of trespass or trover against the defendant, who has sold his goods without authority, and obtains a

(Marsh v. Pier.)

judgment covering the value of the goods, the right of property in them, I take it, from the weight of the *English* authorities on this subject, is thereby changed from the plaintiff, so that he could not maintain an action afterwards for the goods, against the vendee of the defendant. *Brown* v. *Wootton*, *Cro. Jac.* 73, per FENNER, Justice, " the property of the goods is changed," page 74. S. C. *Yelv.* 67–8, and note (1,) by *Metcalf. Moore*, 762. *Adams* v. *Broughton*, 2 *Stran.* 1078. S. C. *Andr.* 18. *Bull. N. P.* 47. 1 *Cromp. Prac.* 184. Per Lord HARDWICKE, in *Smith* v. *Gibson*, *Rep. Temp. Hard.* 319. " It is a sale of the thing to the defendant, which vests the property in him." 3 *Starkie's Ev.* part 4, page 1281. So judgment for the plaintiff in *replevin* in the *detinet* for damages, vests the property of the goods in the defendant. *Moor* v. *Watts*, 1 *Ld. Raym.* 614. 12 *Mod.* 428. In *New York*, however, it is held, that the property of the plaintiff in the goods in such cases, is not changed, until the defendant shall have paid, or satisfied the judgment, in conformity to the rule *solutio pretii, emptionis loco habetur*, which seems to be sanctioned by what is laid down in *Jenk.* cent 4, case 88, page 189. *Curtis* v. *Groat*, 6 *Johnson*, 168. *Osterhout* v. *Roberts*, 8 *Cowen*, 43. But in *Virginia*, in *Murrell* v. *Johnson's Adm.* 1 *Henning* and *Mun.* 449, the court seemed to think, that *A.* whose slave had been sold without his authority, by *B.* to *C.*, and by *C.* delivered to *D.*, having brought an action of *detinue*, and obtained a judgment in it against *C.*, could not afterwards maintain an action of *detinue* against *D.* for the same slave, notwithstanding his judgment against *C.* still remained unsatisfied. So if the plaintiff brings an action of *assumpsit*, instead of trover or trespass against the defendant, who has sold his goods without authority, as he may do according to many of the foregoing cases, and recovers a judgment, I apprehend that he cannot afterwards sustain an action of any kind, against the vendee of the defendant, or any person claiming the goods under him. And this not merely for the reason assigned in the cases cited above, but for an additional, and perhaps still more forcible one, which is, that by thus claiming the money arising from the sale made of the goods by the defendant, he thereby affirms it, for the money arising from the sale of the goods is all that the plaintiff can claim and recover in the action of assumpsit, and by taking a judgment for it, it does appear to me, that he thereby ratifies and confirms the sale made of the goods, and he shall not afterwards be permitted to gainsay it. *Omnis ratihabitio retrotrahitur et mandato seu licentiæ æquiparatur. Lamine* v. *Dorrell*, 2 *Ld. Raym.* 1216. *Bennitt* v. *Francis*, 4 *Esp. Rep.* 28. Accordingly, in *Brewer* v. *Sparrow*, 7 *B. & C.* 310. *S. C. M. & R.* 2, it was held, that a person having once affirmed the acts of another, who wrongfully sold his property, cannot afterwards treat him as a wrong doer, and maintain trover against him. And should the plaintiff fail, on trial of the action of *assumpsit*, and have a verdict and judgment given against him, still he would be precluded thereby from maintaining another action for the same goods, involving the same evidence, and in effect, the same

(Marsh *v.* Pier.)

cause of action, for the question, or subject-matter of dispute, having passed once *in rem judicatam,* he shall not again vex the defendant or those claiming under him with a second action. *Young* v. *Black,* 7 *Cran.* 567.

Neither is it material in such cases, that both actions were commenced on the same day, or at different dates, and were both pending afterwards, at the same time, and the action last brought, tried first, and judgment rendered in it; still the plaintiff will be bound by it, and be precluded from further maintaining the action first entered, and so *vice versa.* This was the case in *Garvin* v. *Dawson,* 13 *Serg. & Rawle,* 246, where the second action between the parties, commenced about one month after the first was tried, and a judgment rendered in it in favour of the defendant, which was afterwards held to be a bar to the plaintiff's further maintenance of his first action. This is according to the rule, *nemo bis vexari debet,* which allows to every one the opportunity of having his complaint fairly investigated, and fully heard before the judicial tribunals of the state, but being once decided by the proper court, after such investigation and hearing, the peace and quiet of the community require that there should be an end of the dispute. If we disregard this rule, we have no other, and every controversy must become interminable.

From the views which I have taken of this part of the case, it appears to me, that the exemplification of the record of the Superior Court of the city of *New York,* was not only pertinent to the issue joined, and therefore admissible, but would have been conclusive evidence against the plaintiff's right of property to the logwood, had it been received, unless he had shown that the logwood for which he made a claim in that action, was not the same claimed in this, or that he had on the trial of that, withdrawn that part of his claim which consisted of the logwood. The defendant below in this action, pleaded property in the logwood, and the judgment of the Superior Court of the City of *New York,* showing that the plaintiff had been divested of his right to it, by a sale made thereof, under which the defendant below in this action, claims to derive his right, established greatly the most important link in the chain of his title. And although the judgment of the Superior Court of the city of *New York,* was rendered during the pendency of this action, still I think is was not necessary to plead it, in order to make it admissible evidence, because it was, in effect, the decision of a competent court of concurrent jurisdiction, given in affirmance of the sale of the logwood, mentioned in the record of the judgment made by the defendants therein named, before the commencement of this action, under which the defendant here claims a right to the logwood. Neither do I conceive that it was necessary to plead it, in order to make it *conclusively* binding upon the jury against the plaintiff below ; for if it was properly admissible under the plea of property, of which I entertain no doubt, as it went directly to establish the validity of the sale of the logwood, under which the defendant below claimed it, it being the judgment of a competent

(Marsh *v.* Pier.)

court, must be considered the conclusion or sentence of the law on the facts of the case, and therefore not to be set aside, reversed or disregarded, by either court or jury in this action.    This doctrine, as I conceive, is not inconsistent with the rule laid down by a majority of this court, in *Kilheffer* v. *Herr,* 17 *Serg. & Rawle,* 322, but comes within the qualification there mentioned, that wherever the party is not bound to plead specially to enable him to give the record of a former recovery in evidence, it will, when given in evidence, although not pleaded, be conclusive and binding upon the plaintiff, the court, and the jury. 1 *Phil. Ev.* 223–4. (*New York,* 1816.)    Where a subject or question in controversy has been once settled by the judgment of a competent tribunal, it never ought to be permitted to be made the ground of a second suit between the same parties, or those claiming under them, as long as the judgment in the first suit remains unreversed.    The peace of the community is a great *desideratum,* and nothing ought to be tolerated, that would disturb it unnecessarily. Before the rendition of a judgment, the court is presumed to be made acquainted by one or other, or by both of the parties, with every thing that is necessary to be known, in order to procure a correct decision upon the case ; so that the judgment of the court not being pronounced, until after it has been so informed, must be taken and considered as corresponding and answering fully to the claims of justice.    It is therefore, altogether inadmissible to say, that a renewal of the contest shall or ought to be permitted, because the first decision was not just or right.

The propriety of those decisions which have admitted a judgment in a former suit, to be given in evidence to the jury on the trial of a second suit for the same cause, between the same parties or those claiming under them, but at the same time have held that the jury were not absolutely bound by such judgment, because it was not pleaded, may well be questioned.    The maxim, *nemo debet bis vexari, si constet curiæ quod sit pro una et eadam causa,* being considered, as doubtless it was, established for the protection and benefit of the party, that he may therefore wave it ; and unquestionably, so far as he is individually concerned, there can be no rational objection to his doing so.    But then it ought to be recollected, that the community has also an equal interest and concern in the matter, on account of its peace and quiet, which ought not to be disturbed at the will and pleasure of every individual, in order to gratify vindictive and litigious feelings.    Hence, it would seem to follow, that wherever on the trial of a cause, from the state of the pleadings in it, the record of a judgment rendered by a competent tribunal upon the merits in a former action for the same cause, between the same parties or those claiming under them, is properly given in evidence to the jury, that it ought to be considered conclusively binding on both court and jury, and to preclude all further inquiry in the cause ; otherwise the rule or maxim, *expedit reipublicæ ut sit finis litium,* which is as old as the law itself, and a part of it, will be exploded and entirely disregarded.

(Marsh *v.* Pier.)

But if it be part of our law, as seems to be admitted by all that it is, it appears to me that the court and jury are clearly bound by it, and not at liberty to find against such former judgment. A contrary doctrine, as it seems to me, subjects the public peace and quiet, to the will or neglect of individuals, and prefers the gratification of a litigious disposition on the part of suitors, to the preservation of the public tranquillity and happiness. The result, among other things, would be, that the tribunals of the state, would be bound to give their time and attention to the trial of new actions, for the same causes, tried once or oftener, in former actions between the same parties or privies, without any limitation, other than the will of the parties litigant, to the great delay and injury, if not exclusion occasionally of other causes, which never have passed *in rem judicatam.* The effect of a judgment of a court having jurisdiction over the subject-matter of controversy between the parties, even as an estoppel, is very different from an estoppel arising from the act of the party himself, in making a deed of indenture, &c. which may, or may not be enforced at the election of the other party ; because, whatever the parties have done by compact, they may undo by the same means. But a judgment of a proper court, being the sentence or conclusion of the law, upon the facts contained within the record, puts an end to all further litigation on account of the same matter, and becomes the law of the case, which cannot be changed or altered, even by the consent of the parties, and is not only binding upon them, but upon the courts and juries ever afterwards, as long as it shall remain in force and unreversed.

The fourth error is, that the court below refused to admit in evidence the exemplification, in connexion with the bill of particulars already set out *verbatim.* That the exemplification was admissible, has been shown ; but if it had not been admissible of itself, it is not easy to conceive how this writing, called " a bill of particulars," would have made it so. Indeed, without any proof having been given, or even offered, to show that this bill of particulars was made, and came from the plaintiff, *Sylvester Pier*, or from his attorney or his counsel, to *William Nott*, the defendant in the action, set forth in the exemplification, or to his attorney or counsel, before the trial of that action, in short, to show that it was genuine, and what it purported to be on its face, I am at a loss to conjecture upon what ground the counsel offering it in evidence, could have imagined that it was admissible, either conjunctively or separately. If such evidence, however, as I have mentioned, of its having come from the plantiff, his attorney or counsel, to the defendant in the action set forth in the exemplification, his attorney or counsel, before the trial of it, had been first given, or the court had refused to receive it when offered, it would have been error in the court below, not to have received such preliminary testimony, and after that, not to have received the bill of particulars itself in evidence, after the exemplification had been first read in evidence, or not to have admitted it in connexion with the exemplification. But without such preliminary proof being made, it was clearly not ad-

(Marsh *v.* Pier.)

missible ; after it, it was, because it would have shown to demonstra-tion, that the cause of action, so far as it consisted of a claim, for and on account of the logwood in the suit tried in the Superior Court of the city of *New York*, was identically the same with the cause of action in this case.    The court below were right in rejecting the bill of par-ticulars, as no proof was offered to show that it was genuine, and what it purported to be.

The eighth and last error, is, that the verdict is general for the plaintiff, giving the amount of damages, which the jury conceived the plaintiff was entitled to recover, without finding the value of the goods *eo nomine*, and damages separately besides for their detention, so that the judgment might have been rendered accordingly and for a return irrepleviable.    Where the defendant in replevin claims property in the goods for which the writ is sued out, and gives bail to the sheriff, as was done in this case, the sheriff cannot replevy them. He is bound to take the bail if good, and to leave the goods in the possession of the defendant.    The plaintiff must therefore count in the *detinet*, as the goods are not delivered to him, and if he succeeds on the trial in establishing his right of property to the goods, he " shall have judgment to recover *all in damages*, as well the value of the goods as damages for the taking of them and his costs."  *F. N. B.* 69, *L.* and the cases referred to in note (c) 9th ed. *Dublin*, 1793. No judgment for a return of the goods is given in such case, but for damages equal in amount to the value of them, as a compensation for their loss, and the property in the goods is thereby transferred, as I have already said in another part of this case, to the defendant. The judgment rendered in this case is in the usual form.   *Gilb. on Replev.* 125–6.    *Easton* v. *Worthington*, 5 *Serg. & Rawle*, 131. *Hosack* v. *Weaver*, 1 *Yeates*, 478.    *Hardy* v. *Metzgar*, 2 *Yeates*, 347. In those two last cases, the judgment in each was rendered in the same form in favour of the plaintiff, upon the plea of property, as in this.    There is therefore no error in the form of entering the judg-ment here, but it must be reversed for the third error assigned.

Judgment reversed and a *venire facias de novo* awarded.