**Martin v. Keffer**

*William R. Mervine,* for plaintiffs.
*Bernard J. Hessley,* for claimant.

WOLFE, *P.J.,* October 20, 1980—Plaintiffs have entered objections to the sheriff's determination of ownership of certain personal property in the possession of Ronald Weller as garnishee in the sheriff's return on a writ of execution issued by plaintiffs.

The facts are not in dispute. Plaintiffs conveyed premises to defendant upon which was a restaurant enterprise and at the same time of the deed delivery consummated a bill of sale of the personal property to operate the restaurant. In payment therefor defendant executed a first mortgage to the Warren National Bank and a second mortgage to plaintiffs for the total payment of the realty and equipment. No security agreement was entered on the personalty. Defendant went into default and plaintiffs entered judgment against defendant and issued a writ of execution on the personalty in possession of the claimant-garnishee[1] that had been sold to him by defendant approximately 13 days before the entry of judgment and levy attachment. It was not disputed by claimant that plaintiff, Marie Martin, observed

---

1. Ronald Weller, President of Flying W. Ranch.

him removing the property from the restaurant and advised him defendant had not been paid for it and he was not to remove it; nonetheless, claimant did remove it and paid defendant $1,000 for part of the equipment and also agreed to pay $2,000 to defendant's father if the equipment was fully usable. Since ascertaining the claim of plaintiff he has not paid any more towards the purchase.

Claimant argues since he came into possession of the property prior to the entry of judgment and execution of levy thereon plaintiffs have no cause since it is admitted there was no chattel mortgage or security agreement perfecting a lien in favor of plaintiffs on the personalty. We disagree.

The Uniform Commercial Code controlling sales is, by its terms, made applicable to any transaction intended by the parties to create a security interest in personal property: 13 Pa.C.S.A. §2102. Here, the parties agree no security interest was intended nor was there any security executed other than the mortgage. Thus, the Commercial Code in regard to secured transactions is not applicable and we are relegated to prior law governing sales of personalty. Under the prior Uniform Sales Act and the common law a distinction is made between voidable titles to personalty and those persons who have no title. In the former if the property passes to a bona fide purchaser for value any equity of the original owner is terminated and the bona fide purchaser's rights become indefeasible whereas in the latter no title may pass irrespective of change of possession. See 13 Pa.C.S.A. §2403, wherein the Uniform Commercial Code has codified this common law concept:

"A purchaser of goods acquires all title which his transferor had or had power to transfer except that

a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. . . ."

Our courts continue to recognize the common law legal tenet a purchaser of goods is not one in good faith if he knows or has reason to know his vendor either lacks title or authority to sell unless the transaction is under the shelter principle of the Uniform Commercial Code, section 2403(1), as recognized in Linwood Harvestore, Inc. v. Cannon, 427 Pa. 434, 437, 235 A. 2d 377 (1967):

"The general rule for chattels is that a bona fide purchaser from a thief gets nothing. 77 C.J.S. 1099, Sales §291. As between two persons having equal equities, the holder of the legal title prevails.

"Once, however, the original owner has exercised his option of securing a judgment against the converter, the equities are no longer equal, at least under the theory of the Marsh case as appellees read it.[2] The Plaintiff has had a chance for relief elsewhere; moreover, there is an interest in prompt administration of justice, favoring binding the Plaintiff to his choice. Yet the balance never swings to the vendee of the converter, where such vendee is not bona fide. *Where the vendee knows or has reason to know of his vendor's lack of title or authority to sell, then the original owner ought in justice to be able to recover from the vendee of the converter.*" (Emphasis supplied.)

In the instant case admittedly title to the chattels passed to defendant at the time plaintiffs executed the bill of sale on October 23, 1974; nonetheless the

2. Marsh v. Pier, 4 Rawle 273 (1833).

delivery of possession of the chattels was subject to payment of the entire purchase price of the transaction between plaintiffs and defendant. Thus, defendant possessed a voidable title in the event payment was not made. This title could become indefeasibly vested in the claimant only if the claimant were a bona fide purchaser for value. It is not disputed he was advised by plaintiff not to take the property as it was not paid for by defendant who was in the process of delivering the chattels to claimant.

Claimant argues he is in good faith and a bona fide purchaser because he checked the records at the court house and found no security agreement filed and therefore felt confident in maintaining possession. Again, this is not a security transaction. The Uniform Commercial Code is not exclusive in its application to all transactions of the sale of personalty. The common law is still viable in the absence of any agreement between the seller and purchaser to secure the title in the seller. Clearly, when claimant was put on direct notice of the questionable title of his vendor, it was his duty to make reasonable investigation as to the right of defendant to deliver legal title to him.

Claimant was served as a garnishee pursuant to Pa.R.C.P. 3101(b)(2) as a person who has property of defendant in his custody, possession or control. This attachment under the levy naming claimant as garnishee is valid in this instance.

For these reasons we enter the following

## ORDER

And now, October 20, 1980, plaintiffs' objections to the sheriff's determination of title of the chattels under levy as the property of the claimant, Flying W. Ranch, Inc. are sustained, the sheriff's findings

reversed and the sheriff is authorized and directed to, at the direction of plaintiffs, execute upon the said chattels as the property of plaintiffs and make his return of sale accordingly.