# Shaw *versus* Bowman.

1. The right of the outgoing tenant to the way-going crop is settled law in Pennsylvania. It follows that he may dispose of it as he may of any article of personal property.

2. A tenant sold his right to a way-going crop, and the purchaser so notified the landlord. Subsequently the lessee and the lessor concluded a settlement, whereby the lease was cancelled, and possession of the premises surrendered. The purchaser of the crop was not a party to this settlement. *Held*, that he was not thereby precluded from claiming the crop.

October 23d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Erie county :* Of October and November Term 1879, No. 26.

Trover and conversion by J. H. Bowman, to the use of J. W. Bowman, against A. A. Shaw.

Shaw, the defendant, owned a farm in Erie county, and on March 23d 1873 leased it to J. H. Bowman for a term of two years from April 1st 1873. The lease contained the following condition :—

" The party of the first part furnishes one-half of all seed, except grass seed, and receives one-half the proceeds; and further, he pays all taxes on 'said farm, except road tax. He also leaves on farm (certain horses, cattle, wagons, &c.), for which the party of the second part agrees to pay to the party of the first part 6 per cent. interest on one-half the above valuation; and the party of the second part further agrees that if, at any time during the term of said lease, any of the above-named live-stock should die he will pay to the party of the first part one-half the above valuation of said stock; and further, that at the expiration of said lease, he leaves on farm the same amount of stock that he receives, except what may have died and not been replaced or sold by consent of both parties. All repairs to be borne equally by both parties. The party of the second part further agrees that the party of the first part shall receive one-half the proceeds for pasturing and for feeding droves at the barn out of undivided provender. The party of the first part shall furnish all grass seed needed for farm."

In the fall of 1874, Bowman sowed five acres of this farm with wheat, and in the following January sold his interest in this wheat to his brother, J. W. Bowman, for whose use the above suit was brought. On the 1st of February thereafter, J. W. Bowman saw Shaw, and notified him that he had bought his brother's interest in the wheat.

In March 1875, Shaw and J. H. Bowman concluded a settlement, which was reduced to writing, as follows :—

[Shaw *v.* Bowman.]

"Now, March 11th 1875, on the settlement of all accounts between A. A. Shaw and J. H. Bowman, there is due to A. A. Shaw to this date $38.17, as shown by J. H. Bowman's books and agreed to by both parties; and this day the lease between them of the matter of the farm is cancelled, and Mr. Shaw takes possession of the same, together with the stock thereon, and says that he is satisfied with the conditions in which the said stock is delivered to him."

In the summer of 1875, J. W. Bowman hired the necessary men to cut the wheat, and went to the field for that purpose, but was not permitted by Shaw to cut it.

This suit was brought for the purpose of recovering the value of one-half of the wheat, less the expense of harvesting and threshing it.

At the trial, before McDermitt, P. J., the plaintiff submitted the following points, to which are appended the answers of the court:

1. If the jury believe from the evidence that previous to the settlement between Shaw and Bowman, of March 11th 1875, Shaw was informed that J. W. Bowman had bought the interest of J. H. Bowman in the wheat, and that said wheat, or the value of it, did not enter into said settlement, then the plaintiff in this case is entitled to recover the value of the one-half of the wheat and interest on same, less one-half the expense of harvesting, &c.

Ans. "This point is affirmed; but such notice must have been given Shaw by J. W. Bowman himself, for there is no evidence that he authorized any other person to communicate the fact to Shaw."

2. If the wheat in dispute did not form part of the settlement of March 11th 1875, and the jury believe from the evidence that Shaw has not paid plaintiff for said wheat, then the cancelling of the lease by the parties to it does not in any manner affect the right of the plaintiff to recover.

Ans. "Whether the lease was cancelled as between Shaw and J. H. Bowman is immaterial to this issue, provided the evidence satisfies you that J. H. Bowman assigned the wheat to J. W. Bowman prior to the settlement of 11th of March 1875, and that the latter notified Shaw of the same prior to said settlement. Thus explained, this point is affirmed."

The first and second points of defendant, with the answers of the court thereto, were as follows:—

1. That the equitable plaintiff's right or ownership, if any, in the way-going crop, the property in controversy in this suit, grew out of the relation of landlord and tenant between the defendant, A. A. Shaw, and the legal plaintiff, J. H. Bowman, created by the lease put in evidence, dated March 26th 1873, and the said lease having been cancelled by the written consent of the parties thereto, and the possession of the premises surrendered to the landlord

[Shaw *v.* Bowman.]

before the expiration of the term, the relation of landlord and tenant thereby became extinguished, and with it all right of re-entry for the way-going crop by the tenant, or other person in his right, and therefore this action cannot be maintained, and the verdict must be for defendant.

Ans. " So far as J. H. Bowman is concerned, this point is affirmed; but as to J. W. Bowman, is refused, as explained in the general charge."

2. That the right of a tenant to the way-going crop depends (in the absence of express stipulations) upon the continued relation of landlord and tenant to the end of the term, and that any extinguishment of such relation before the end of the term by release, cancellation, surrender of the premises or otherwise, destroys any right of re-entry for the way-going crop, and the tenant in this case having cancelled the lease and surrendered the premises to the landlord, lost all right to the way-going crop and of re-entry for the same, and J. W. Bowman, his assignee, could not have any better or greater right of re-entry than he had, and therefore this action cannot be maintained, and the verdict must be for the defendant.

Ans. " The law is well stated in the point as between Shaw and J. H. Bowman, but is answered in the negative as to J. W. Bowman."

In the general charge, the court, inter alia, said :—

" The lease between the original parties to it contains no stipulation prohibiting J. H. Bowman from assigning all or any portion of his interest in it to any person he saw fit. He could, therefore, without the consent of Shaw, sell or assign his entire interest, or any part of it, to J. W. Bowman, and the latter thereby became jointly liable with the former, at least to the extent of his interest so acquired, to Shaw, for the fulfilment of the lease with Shaw. * * * If J. H. Bowman assigned to J. W. Bowman his interest in the wheat before the 11th day of March 1875, as he claims his evidence shows, and if it also shows that he notified Shaw of the same prior to said date, then the relation of landlord and tenant between them began to run as to said wheat field, and would continue to run until the wheat was harvested and a reasonable time thereafter for threshing and removing J. W. Bowman's share of the wheat and straw from the premises."

Verdict for plaintiff, when defendant took this writ, and alleged that the court erred in the answers to the foregoing points and the portions of the charge noted above.

*G. A. Allen* and *L. Rosenzweig,* for plaintiff in error.—The tenant, in order to hold his initiate right to the way-going crop, must continue the tenancy to the end of the term, or rather must see to it that the tenancy be not merged or destroyed before its

natural termination by the terms of the deed creating it. Any act or thing done that will extinguish the estate will likewise totally extinguish any right of the tenant to the way-going crop: Greider's Appeal, 5 Barr 422.

The effect of a surrender operates alike upon the rights of both landlord and tenant. It extinguishes all rights of the landlord and all rights of the tenant issuing out of the estate surrendered.

*Davenport & Griffith,* for defendant in error.

Mr. Justice Paxson delivered the opinion of the court, November 10th 1879.

The right of the outgoing tenant to the way-going crop is settled law in Pennsylvania. It follows that he may dispose of it as he may of any other article of personal property. To deny this right would, in many instances, deprive the tenant of any beneficial use of his crop. He may die between the expiration of his term and the succeeding harvest. No one doubts in such case the crop would pass to his executor or administrator as a part of the assets of his estate, and may be gathered by him under the conditions of the lease, or sold to a stranger as any other chattel. Or the tenant may move away to a point so distant that the expense of returning to harvest it would equal the value of the crop. In such case if he may not sell it, and the purchaser be entitled to gather it, the tenant would be practically deprived of it. Such is not the law.

In this case J. H. Bowman, the tenant, sold his interest in the wheat crop to his brother, J. W. Bowman, and the latter gave the landlord notice thereof. After this notice, and a few days prior to the expiration of the term, J. H. Bowman settled with his landlord; cancelled the lease, and surrendered the possession of the demised premises. It was contended that because of this settlement to which J. W. Bowman was not a party, the latter lost his right to the crop. The reason given is that the surrender extinguished the estate of the tenant, and that the right to the way-going crop fell with it. Greider's Appeal, 5 Barr 422, was cited in support of this view. That case decided that after a surrender by the tenant to his landlord, the latter cannot claim rent. It may be that the settlement by J. H. Bowman with his landlord; the cancellation of the lease, and the surrender of the possession without any reservation of the wheat crop, would have prevented him from claiming it. But even if this be so why should not J. W. Bowman, the purchaser of the wheat crop, be entitled to take it away? When he bought it J. H. Bowman had full control and dominion over it. It was his property and the sale of it was forbidden by no rule of law or public policy. The landlord was notified of the sale prior to the settlement referred to. The wheat belonged to J. W. Bowman at the time the settlement was made.

10 Norris—27

It was a matter therefore which could not have been affected by that settlement had the parties wished or intended it. It does not appear, however, to have been referred to or considered. This was probably owing to the fact that the parties both knew they had nothing to do with it.

I concede the relation of landlord and tenant did not exist between Shaw and J. W. Bowman. This is not material to the point in controversy. The relation of landlord and tenant always ceases with the expiration of the term and surrender of possession. The tenant comes back for his way-going crop after his term has expired. He does so not by virtue of his lease, for no such right is usually reserved therein, but by the custom of the country. It is a part of the common law. The lease shows that he was formerly a tenant, and the proportions in which the crop is to be divided, or his right to the whole, as the case may be. He ploughs and sows by virtue of the lease, but it is the common law that assures to him the harvest.

The rulings of the learned judge are free from error, and his judgment therefore is                              Affirmed.