# J. L. McKay v. G. W. Pearson, Appellant.

*Actions—Trover and Conversion—Way going crop.*

° The absolute and unqualified denial of goods to him that hath the right to demand them, is an actual conversion and not merely the evidence thereof, and trover will lie immediately upon such denial.

An out going tenant has the right to the way going crop, and the refusal by the new tenant to permit him to enter upon the land and harvest it is a conversion of the crop. A subsequent permission given by the tenant in possession to the owner of the crop to harvest the same after the prior refusal, does not destroy the right of action the crop in the meantime having become injured by the delay in harvesting the same.

530        McKAY v. PEARSON.

Statement of Facts—Assignment of Errors.    [6 Pa. Superior Ct.

Argued May 12, 1897. Appeal, No. 77, April T., 1897, by defendant, from judgment of C. P. Mercer Co., Sept. T., 1894, No. 101, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Appeal from judgment of justice. Before MILLER, P. J.

This was an action of trespass to recover the value of a crop of growing grain alleged to be the property of the way going tenant.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $46.66. Defendant appealed.

*Errors assigned* among others were (1) To portions of the judge's charge as follows : "It is a question of fact for you to find whether or not there was a conversion ; but it is likely you will find there was a conversion in case you find that the plaintiff went to the premises on the 4th day of July to cut and harvest the wheat, and the defendant refused to permit him to go on to the premises to do so. He could not cut the wheat without going to the field ; he had no right to go there without permission of the defendant. When the defendant forbade him to enter upon his premises, if he did so, plaintiff was not bound to fight his way in ; and you will likely, if you find those facts, find there was a conversion. There can be no recovery unless there was a conversion under any circumstances ; but if there was a conversion, as we have explained it to you, on July 4th, or about that date ; if there was an offer on the part of the defendant to permit the plaintiff to cut this crop on the 13th; if the crop had deteriorated between the dates of July 4th and July 13th, then the plaintiff was not bound to cut it on the 13th, or any time thereafter, and he is entitled to recover." (8) In answer to plaintiff's sixth point, which point and answer are as follows: "6. That if plaintiff was there with his men and machinery ready and prepared to do this work of harvesting his crop, and was prevented from so doing by the wrongful act of the defendant, then plaintiff cannot be charged with the cost of harvesting the same, but would be entitled to the full value of his crop. *Answer :* If there was a conversion of the crop on

or about July 4, 1894, and if there was an offer on the part of the defendant to the plaintiff to permit him to harvest this wheat crop on or about July 13, 1894, if the crop had been damaged by the unlawful act of the defendant between July 4th and 13th, the plaintiff would be entitled to recover the value of his crop of wheat on July 4, 1894. Thus explained this point is affirmed." (9) In answer to defendant's second point, which point and answer are as follows : " 2. If the jury believe from the evidence that the defendant offered to buy the field of wheat from the plaintiff on July 13th, and the plaintiff refused to sell it to him, and at the same time notified the defendant that he, defendant, dare not cut it, and that the defendant never did cut the wheat nor convert it to his own use, then the plaintiff cannot recover in this action. *Answer :* If there was no conversion by the defendant there can be no recovery by the plaintiff. If you find there was a conversion by defendant, then this point is refused."

*S. R. Mason* and *B. Magoffin,* for appellant.

*W. H. Cochran,* for appellee.—It is held that trover and conversion is a proper remedy for the tenant to recover the value of the way-going crop where the same is denied him : Shaw v. Bowman, 91 Pa. 414.

This suit was begun before a justice of the peace, under the provisions of the Act of Assembly of 1879, P. L. 194, which expressly confers jurisdiction upon justices to try suits in trover and conversion, where the sum in controversy does not exceed $300.

A wrongful intent is not an essential element of the conversion. It is enough in this action that the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it: Boyce v. Brockway, 31 N. Y. 493. See also Whitaker v. Houghton, 86 Pa. 51.

Opinion by Wickham, J., February 19, 1898 :

J. S. McKay, the plaintiff, in the fall of 1893, sowed five acres of wheat on a farm that he had leased from William Turner. At the expiration of his term, in the spring of 1894, he removed from the farm. On July 4, 1894, the wheat was

ripe and ready for cutting, and the plaintiff, with a man and the necessary machinery, went to the premises to harvest it, as it is now admitted he had a legal right to do.

He was there met by G. W. Pearson, the defendant, who had succeeded him as Turner's tenant, and who warned him to keep off the land. The next morning the plaintiff again sought to gain an entry, for the same purpose, and was again driven away. At the first visit, the defendant, as he admits, refused to allow the plaintiff to cut the wheat, because, to quote his own language, " Bill Turner told me when I rented from him that he " the plaintiff, "had no right to put the wheat in and had no right to the wheat." Turner denied that he had told the defendant this, but the matter is more interesting than important, as he could not, by anything he might say, destroy the plaintiff's rights. The plaintiff says that the defendant gave as a reason for excluding him, that Turner had not reserved the wheat in the lease, and that therefore it belonged to him, the defendant. On the second visit, the defendant told the plaintiff that he had not, the evening before, claimed ownership of the wheat, but he adhered to his positive refusal to not permit the plaintiff to enter and harvest it. The plaintiff then, perforce accepting the situation, took his machinery and man and went away, evidently hopeless, as he had a right to be, of being ever able to get his property.

Looking at all the evidence, it is plain that the defendant, unqualifiedly and absolutely, denied the plaintiff's title, and did and said that which must have led the latter to conclude, that his wheat was lost to him. He could draw no other inference from what had happened. If one locks my money in his safe or my horse in his stable and coolly tells me " I don't claim to own your property but I will never let you have it," he is guilty of a conversion. By what magic could the plaintiff gather his crop without going on the land? In the very early case of Baldwin v. Cole, 6 Mod. 212, Lord Holt, speaking of an absolute and unexplained denial, said: " The very denial of goods to him that hath the right to demand them is an actual conversion, not only evidence of it, for what is a conversion but the assuming upon one's self the property and right of disposing of another's goods." " Where the refusal is absolute and unexplained, it is plenary evidence of a conversion : " 26

Eng. & Am. Ency. of Law, 731. "Every conversion consists of, first, a dealing with the goods in a manner inconsistent with the right of the person entitled to the immediate possession; second, an intention in so doing to deny his right or assert a dominion which is inconsistent with such right:" Ibid. 735. One who purchased land whereon was felled timber that had been sold to another, of which sale he, the purchaser of the land had notice, refused to permit the purchaser of the timber to remove it. He was held liable for conversion: Sherman v. Way, 56 Barb. 188.

It is not, and never was, claimed that the defendant was holding the wheat for Turner. He certainly was not keeping it for the plaintiff. The inevitable conclusion therefore is, that he was retaining it solely for some purpose of his own, and whether that purpose was malicious or mercenary is of no importance. The test is, not what the defendant has or has not acquired, but what has been the effect of his act with respect to the plaintiff, and whether it amounts to an absolute denial and repudiation of the plaintiff's right. Had the defendant informed the plaintiff that he intended to exclude him only temporarily, or long enough to get time to investigate his title, there would be reason for saying that the evidence of conversion was doubtful. But, according to the tenor of the defendant's own testimony, he had already inquired concerning the matter of title, and made up his mind that the plaintiff had no right to the wheat. It is too clear that he thought he had a technical advantage, over the plaintiff, and meant to hold it. There was nothing equivocal or uncertain in his conduct. He intended to prevent the plaintiff from getting the wheat.

Several days later, alarmed perhaps by the plaintiff's positive assertion of his right to the crop, the defendant concluded to see a lawyer. He did so and found out that he was wrong, but, not until July 13, did he inform the plaintiff, that the latter might cut the wheat. His excuse for the delay is, that the plaintiff seemed to avoid him on a couple of occasions on the highway. If it be true that the plaintiff showed a want of desire to meet him, it is hardly to be wondered at, in view of what had already occurred between them. Had the defendant however been sufficiently anxious to right the wrong he had committed, and to restore to the plaintiff dominion over the crop, he doubtless could easily have found the latter at his habitation,

or sent him word by mail or messenger. Nor is it surprising if, on July 13th (although this is denied), the plaintiff, a man unlearned in the law and smarting under a sense of injury, told the defendant that the latter dare not cut the wheat.

The essential questions involved in this case may be thus summarized and answered: First, did the plaintiff own the wheat, and have the right to enter on the land and harvest it? These rights were secured to him by his lease, as well as by the custom of the country, which is part of our common law, Shaw v. Bowman, 91 Pa. 414, and indeed they are now conceded.

Second, was there a conversion of the crop by the defendant, and, if so, when? There being, in effect, an absolute and unqualified denial of the plaintiff's right, as well as a positive and final refusal to allow him to cut the wheat on July 4th and 5th, these things would, under the authorities already cited, be plenary evidence of the conversion, provided that a growing crop can be converted without severance, a matter to be presently considered.

Third, if a right of action accrued, when was it complete? Undoubtedly the plaintiff could have legally brought suit on July 4th, or on July 5th at the latest.

Fourth, did the permission given by the defendant to the plaintiff, on July 13th, to enter and cut the grain take away the right of action already accrued? The learned trial judge, going even further than some of the decided cases warrant, told the jury that if the wheat were worth as much on July 13th as it was at the time of the alleged conversion, there could be no recovery, otherwise, if there had been deterioration in value. This was stating the law most favorably for the defendant: Whitaker v. Houghton, 86 Pa. 48; Hart v. Skinner, 16 Vt. 138; Green v. Sperry, 16 Vt. 390. The jury found that the grain had been damaged and lessened in value, during the interval. The plaintiff, therefore, was not bound to secure help and machinery, a second time, and harvest the overripe and injured crop.

Fifth, did the plaintiff in any way agree to accept the defendant's offer of July 13th? If he did, of course, at the most, he could only recover the difference in value between the wheat as it was at the date last mentioned and the time of the conversion. The evidence, however, shows that he refused to make any arrangement whatever with the defendant. His statement to the latter, if made, that he, the defendant, dare

not cut the wheat, taken in connection with all the circumstances, was merely an angry expression of opinion as to the defendant's legal rights, and did not amount to an agreement to condone the conversion or to resume dominion over the crop, nor does it seem to have been so understood by either party. Had the defendant consulted his lawyer a second time, he would have been instructed to save what he could of the wheat, and thereby make the best of the situation, in which he had deliberately placed himself.

Lastly, will the action of trover lie under the circumstances detailed? In Pennsylvania, growing crops, unlike trees and other spontaneous productions of the earth, are personal property, and it cannot be doubted that in the present case the wheat was as fully personalty, while attached to the soil, as though actually severed therefrom: Backenstoss v. Stahler's Admrs., 33 Pa. 251. It might therefore be converted, by cutting and carrying it away, by applying the torch to it in the field, or by excluding the owner, when the crop was ready for harvesting, in such a manner as to clearly indicate to him an unequivocal and absolute denial of his right to the grain, and a fixed intent to permanently deprive him of all control over it. In the latter instance the conversion would be complete at once, although the wrongdoer neither then nor thereafter made nor expected to make any profit out of the transaction. Had he retained the plaintiff's wagon in his field until the weather had destroyed it, just as the elements destroyed the wheat crop, in the present case, who will say that he would not have been liable in trover? Nor would the plaintiff have been obliged to await the physical destruction before bringing suit. In Stafford v. Ames, 9 Pa. 343, a case much like the one in hand, the ground of the decision was that the plaintiff's agent "was prevented from cutting and threshing the wheat; he was illegally kept out of possession and had a right to immediate possession."

We see no error in the charge or answer to the points. The question, as to whether or not there was a conversion, was fairly left to the jury. The expression of opinion as to this matter, made by the learned trial judge, was fully justified by the facts, and the rule as to the measure of the damages was correctly given. It would answer no good purpose to discuss, in detail, the many assignments of error. They are all overruled.

Judgment affirmed.