## Cohen v. Bernard, etc.

*M. B. Elwert* and *Arthur P. Salus*, for complainant.
*Elias Magill*, for respondent.

OLIVER, P. J., July 9, 1948.—The proceedings in the instant case were instituted by a bill in equity, filed April 19, 1947. However, after trial of the cause and consultation with the chancellor, counsel for the parties agreed that the original equity questions having been practically eliminated from the proceedings, the case be treated from that point on as if it were a nonjury trial.

On July 2, 1936, Arthur W. Binns, Inc., as agent, leased to John H. Wilson and Elizabeth Wilson, his wife, the premises located at 150 N. 21st Street, Philadelphia, for use as a "dwelling and rooming house", for an initial term of three years and thereafter from month to month at a rental of $35 per month, payable upon the first of each month.

The lease provided, inter alia, that:

"Lessee covenants and agrees that he will do none of the following things without the consent in writing of Lessor first had and obtained: ". . . (b) Assign, mortgage or pledge this lease or underlet or sub-lease the demised premises, or any part thereof, or permit any other person, firm, or corporation to occupy the demised premises, or any part thereof, . . ."

On April 16, 1946, plaintiff, a married woman, acquired the lease by assignment, and ownership of the premises by purchase deed, recorded April 26, 1946. John H. Wilson had died prior to this assignment and Elizabeth Wilson, his widow and surviving lessee, had remarried and was known as Elizabeth McNulty. About

June 1, 1946, Elizabeth McNulty, without notice to or consent of plaintiff owner, had undertaken to assign the lease to defendant Geraldine Bernard. This transaction included the sale to defendant of goods, furnishings, bedding, furniture, and other equipment incidental to her operation of a rooming house upon the premises.

Breach of the covenant against subletting the premises without written consent of the lessor was not asserted by plaintiff. Nor did the parties attempt to explain a reduction of $5 in the monthly rental provided in the written lease. Plaintiff denies the status of defendant as a tenant solely because of her failure to secure plaintiff's written consent to the assignment of the lease to her by Elizabeth McNulty the lessee.

Aside from the measure of damages two problems present themselves to the court: (1) Has plaintiff by her conduct, waived the requirement in the lease of written consent to its assignment? and (2) has plaintiff converted defendant's furniture and other household goods?

1. Defendant resided on the premises although her work as a registered nurse caused her to be absent from time to time. For the months of June, July, and August 1946, defendant paid $30 per month in cash to plaintiff's agent, the West Philadelphia Realty Company, which remitted payment to plaintiff by check. By letter of July 25, 1946, notice of termination of the lease was sent to Elizabeth McNulty, effective August 31, 1946. No such notice was ever sent to defendant, who was actually in possession at the time.

In August 1946 the first of two OPA proceedings was instituted by plaintiff to obtain possession of the premises. According to plaintiff's testimony, Elizabeth McNulty was named as tenant and defendant as terre tenant. For some unexplained reason, this proceeding was not finally disposed of until some seven

months later. Defendant received notice of its withdrawal by OPA letter of February 28, 1947, which stated: "This is to notify you that the petition relating to your eviction of the above premises has been withdrawn, therefore you do not have to move."

Meanwhile, defendant had continued to pay rent at the rate of $30 per month. Rent for September 1946 was paid by defendant's money order, sent by registered mail. Rents from October 1946 to February 1947 were paid to plaintiff by defendant's checks, some of which designated the purpose for which they had been drawn. These checks were received and deposited by plaintiff. However, plaintiff testified that receipts for all rents were sent to Elizabeth McNulty, as lessee. On February 1, 1947, defendant paid $30 rent to Bernard Kane, plaintiff's son, who was acting as her agent. Defendant's checks for March and April 1947, were returned by plaintiff.

A second OPA proceeding was instituted by plaintiff, naming as defendant Elizabeth McNulty alone, despite the fact that plaintiff knew she was neither in posssssion of the premises nor asserting any claim as tenant. Defendant was not informed and had no knowledge of this second proceeding which apparently was unopposed. The OPA, in a letter dated March 6, 1947, informed plaintiff and Elizabeth McNulty that ". . . this office will not intervene in any legal action instituted against the tenant upon the grounds that the tenant's lease has expired or terminated and at the time of termination the occupants of the housing accommodations are subtenants or other persons occupying under an agreement with the tenant, and no portion is occupied by the tenant as his own dwelling; provided the action involves only the removal of the primary tenant and the sub-tenants are permitted to remain as tenants".

By letter of March 14, 1947, plaintiff, through her son and agent Bernard Kane, notified all subtenants that henceforth they were to pay their rent to plaintiff and not to defendant. Thereupon, defendant having learned of the second proceeding against Elizabeth McNulty, appealed to OPA for a hearing. An informal conference was held by OPA which defendant attended, but which resulted in no change in the former decision as to Elizabeth McNulty. The position of OPA is clearly stated, in its letter of April 16, 1947, to defendant's counsel, as follows: "The question as to whether Miss Bernard, . . . or the owner, . . . is entitled to collect rent from the subtenants, appears to depend on whether Miss Bernard is a tenant, which question involves (1) a determination by the local court as to whether the assignment of the lease without the consent of the owner resulted in her becoming a tenant or (2) was there novation resulting in Miss Bernard being substituted as a tenant? We are of the opinion that these questions should be decided by the local court . . ." OPA did not, as plaintiff contends, give plaintiff permission to proceed by legal process to evict defendant, but rather, withheld judgment in the matter until the status of defendant as tenant had been passed upon by the local courts.

A restriction against assignment, in a lease, without the written consent of the lessor may be waived either expressly or by implication from the lessor's conduct, as where with knowledge of the facts, the lessor permits the assignee to remain in possession and accepts subsequently accruing rents from him. See 51 C. J. S. 546. Said Mr. Chief Justice Kephart, in Sferra et al. v. Urling et al., 324 Pa. 344, 347 (1936):

"It is true there is no evidence of written consent having been given, but a jury may find this requirement waived by appellants' conduct over a four year

period in recognizing appellee as tenant and accepting rent from him in that capacity. In Barclay v. The Steamship Company, 6 Phila. Reports, 558, cited with approval in Johns v. Winters, 251 Pa. 169, the court held that a covenant against assignment without written consent of lessor can be waived by the lessor's recognition of the assignee and acceptance of rent from him as tenant: Trickett Landlord and Tenant, (2nd Ed.), p. 405":

Plaintiff relies on Harper et ux. v. Quinlan, 159 Pa. Superior Ct. 367 (1946), to support her contention that acceptance of defendant's checks was not assent to the assignment of the lease. This case is to be distinguished since it did not concern waiver of consent to an assignment, but merely permitted the landlord to accept rent from an admitted tenant after notice of termination without a waiver of the given notice, after the landlord had written to the tenant permitting him "to remain on the property while he was seeking another location". In the instant case, plaintiff had full knowledge of defendant's claim as assignee of the lease when she accepted defendant's checks, money order, and cash in payment of rent. The issuance of receipts in the name of Elizabeth McNulty and the petitioning of OPA for her eviction when plaintiff knew that Elizabeth McNulty was neither in possession, claiming as a tenant, nor paying rent were futile acts in the face of plaintiff's knowledge of defendant's possession, her claims as a tenant by virtue of the assignment, and her actual payments of rent month after month. In a recent case, Maybury v. Izenstatt, 320 Mass. 397, 402, 69 N. E. (2d) 666,669 (1946), the Supreme Judicial Court of Massachusetts, in passing upon the question of waiver of a covenant similar to the one in the instant case said:

"It has been held in most jurisdictions that the acceptance of rent from an assignee of a lease with

knowledge of the assignment constitutes a waiver of a covenant against assignment of the lease by the lessee without the consent of the lessor. That is the law of this Commonwealth (citing cases)."

The period from which the parties claim damages for loss of rentals is from March 7, 1947, to May 19, 1947, about 10 weeks. Plaintiff's son, Bernard Kane, estimated the rentals from subtenants to be about $60 per week or about $600 gross for the entire period. With due allowance for collections made by defendant ($85), rent and other expenses not incurred, defendant suffered a net loss of $450 because of plaintiff's interference with the operation of her rooming-house business.

2. After March 7, 1947, plaintiff took possession of the premises and by distraint and coercion forced the subtenants to pay rent to her. Defendant was able to remove a small amount of her furniture. Thereafter, she was prevented from doing so by coercion and threats of arrest on the part of plaintiff's husband, David Cohen, and her son, Bernard Kane. These actions of plaintiff's agents constituted an unlawful conversion of defendant's property. A wrongful prevention of the removal of chattels by an owner who has the right of immediate possession is a conversion: See 65 C. J. p. 41; McKay v. Pearson, 6 Pa. Superior Ct. 529 (1898); Watts v. Lehman, 107 Pa. 106 (1884); Berry et al. v. Heinel Motors, Inc., 162 Pa. Superior Ct. 52 (1948). The measure of damages for conversion is the value of the property at the time and place of conversion. There was much conflicting testimony as to the value of the furnishings and the quantity which defendant removed. The bill of sale produced by defendant showed that five rooms and four apartments were included in the furnishings of 150 N. 21st Street. However the bill of sale for $1,200 included furnishings in both 148 and 150 N. 21st Street, pos-

sibly the good will as well. Defendant testified as to additional purchases amounting to $98. Defendant also testified that the value of the roomful of furniture removed was about $50. Mrs. Lennie, defendant's witness, values the furnishings at about $775. Plaintiff's witnesses said they were of little value. Making due allowance for depreciation and the value of the goods removed by defendant, a fair estimate of the value of the goods on the premises at the time of the conversion would be $400.

Judgment is therefore ordered to be entered in favor of defendant and against plaintiff in the sum of $850, together with proper costs of this action.