## Kitchen *v.* McCloskey, Appellant.

[Marked to be reported.]

*Trespass—Sheriff's sale—Transfer of title after levy.*

Where one acquires title to property after levy and before sale, he can maintain an action of trespass against the sheriff for selling his property as that of another.

*Confession of judgment to defraud creditors.*

In the absence of proof showing or tending to show actual fraud, trivial circumstances in the confession of judgment, execution and sale, cannot be submitted to the jury.

The relationship of brothers raises no presumption of fraud in the confession of a judgment. Fraud alleged in such case must be clearly and distinctly proved as in other cases.

*Practice—Assignments of error—Charge—Requests.*

A request for binding instructions is necessary to support an assignment of error alleging refusal to submit to the jury.

Argued April 20, 1892.    Appeal, No. 71, Jan. T., 1892, from judgment of C. P. Clearfield Co., May T., 1891, No. 400, on verdict for plaintiff.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for sale by sheriff of two horses belonging to plaintiff as property of another.

On the trial, before KREBS, P. J., the evidence was to the effect that Joseph R. Kitchen confessed a judgment for $286.40 to his brother, Andrew L. Kitchen, the plaintiff, before a justice of the peace and that an execution was forthwith issued and a constable's sale had at which plaintiff bought in everything, including the two horses in question, one of which was sold for about $25 and the other for about $30 to $35. The plaintiff left one horse with his debtor and sold the other to Pennington.    Shortly afterwards, on a judgment obtained in the court of common pleas by G. W. Jose against Joseph R. Kitchen, a fi. fa. was issued, and the defendant, then sheriff, having been indemnified, levied upon, took away and sold the two horses for $187.20.    Before the sheriff's sale Pennington went to plaintiff and the money which he had paid for the horse was returned to him and he returned to plaintiff the re-

ceipt which had been given him when he paid for the horse; and plaintiff notified the sheriff that he claimed the horses. Other facts appear in the charge of the court below and in the opinion of the Supreme Court.

Defendant proposed to offer the records of judgments and writs of fi. fa., issued against Joseph Kitchen, near the time and after the constable's sale, for the purpose of showing that he was in debt at the time he confessed the judgment on which this property was sold.   Objected to as incompetent and immaterial; also because there was no such condition of proof on part of defendant at that stage of the proceeding as justified the admission of such evidence or made it material, there being no proof of fraud or collusion.   Objection sustained, evidence excluded and bill sealed. [6]

Defendant's points were as follows, *inter alia:*

" 3. Even if Joseph Kitchen was indebted to A. L. Kitchen, and the judgment confessed before D. W. Michaels, justice of the peace, was intended to hinder, delay and defraud the creditors of Joseph Kitchen, said judgment was fraudulent and void in contemplation of law and the purchase of the property of Joseph Kitchen by A. L. Kitchen under execution issued on said judgment, conveyed no title to the purchaser, the plaintiff in this suit.   *Answer:* Under the evidence in this case we cannot, in our judgment, affirm that point.   There is no evidence here which, in our judgment, we could submit to the jury sufficient to base a verdict upon, as required by this point.   There is not sufficient evidence of the intention to hinder, delay and defraud the creditors of Joseph Kitchen by the confession of this judgment and the issuing of an execution thereon.   It is not sufficient to create a suspicion, and where fraud is alleged to set aside legal process, and the process which the law recognizes as the means of collecting a debt from a debtor, he who alleges there is fraud must prove by substantive proof the fraud that he complains of, and when the acts of which he complains are such as are recognized by the law when standing separate and apart by themselves, unless they are accompanied by other acts and declarations which clearly show collusion and a combination to cheat and defraud, and hinder and delay other creditors, the jury could not be justified in finding a verdict and the court could not enter a judgment on

a verdict of that kind, and we believe it is our province to say so, that there is not sufficient evidence in this case to justify us in submitting this question to be passed upon by you, and that there is not sufficient evidence of an illegal combination to hinder, defraud and delay other creditors of Joseph Kitchen. [3]

"4. It having been testified by Ross Curry, constable's clerk at the sale, that, when the horses in controversy in this suit were sold by the constable, there was no one present at the sale but the constable, his clerk, the defendant in the writ, his two brothers and the nephew of plaintiff and defendant; that a sale made under such circumstances was void in contemplation of law, and the plaintiff in this suit acquired no legal title to the property at said sale. *Answer:* In our views as to the law upon this question we must decline to affirm that proposition. [5]

"5. It appearing from the evidence in this case, and undisputed, that, at the time of the levy on the brown horse, for which plaintiff seeks to recover in this case, the horse was in the possession of Simon Pennington, he having purchased the horse and having paid for it, the right and title of Andrew Kitchen to the horse, if any was acquired at the constable's sale, became vested in Pennington, and the plaintiff cannot recover for the said horse in this action, he not having at the time of the levy any possession or property in the horse or right of possession. *Answer:* With that I read the sixth point, which is in this language: [1]

"6. Nothing that transpired between Simon Pennington and the plaintiff after the horse was levied on, as shown by the testimony in this case, could transfer a right of action to the plaintiff to maintain this suit in his own name for the horse, and plaintiff cannot recover for said horse in this action. *Answer:* These two points just read cover the transaction with reference to the brown horse after the constable's sale and at the time the writ was put into the sheriff's hands against Joseph Kitchen. The evidence in the cause, which is uncontradicted, is that Andrew L. Kitchen had agreed to and did sell this brown horse to Simon Pennington, and that Simon Pennington paid and delivered the money for him to Kitchen; that the same evening, if I am not mistaken, the same even-

ing or the next, if it was not the same evening at least the next day, the sheriff levied upon the horse. Simon Pennington, after the levy, the same day as I remember his testimony, went to Andrew L. Kitchen and told him that the horse was levied upon and asked for his money. There was some talk between them that evening about Joseph Kitchen making some arrangement. That arrangement was not consummated and carried out, but before the sheriff's sale, whether it was the next day or whether it was three days before the sheriff's sale is not clear here, but at least before the sheriff's sale some days, Simon Pennington returned this horse and received his money from Andrew L. Kitchen. The money was refunded. The sheriff had taken possession of the horse. The sheriff took this horse at the time of the levy out of the possession of Pennington and took him to Mr. Jose's, I believe, or to some place else, took him out of the possession of Pennington, so that at the time that the money was returned by Andrew L. Kitchen the horse was neither in the possession of Pennington nor Kitchen, but was in the charge and custody and control of the sheriff. Now, under these circumstances, we are asked in these two points to instruct you that the plaintiff cannot recover for the value of that horse. Gentlemen of the jury, we may be in error about this, but we cannot agree with the contention set up by these points. The trespass which was begun by the levy made by the sheriff was not complete until the time of the sheriff's sale, and at that time the property and title to the horse had become revested in Andrew L. Kitchen, and while there might be no possible claim for the detention and taking away of the horse, between the time of the levy and the sale, we think that the plaintiff in this case is entitled to recover for the value of that horse. The sale to Simon Pennington was simply nothing more or less than the exchange of horse for money, and when the title was attacked and Mr. Pennington demanded his money back Mr. Kitchen refunded the money within a few days after the demand was made and thereby, we think, became invested with the full title to this horse, and that before the sheriff's sale, and therefore would be entitled to recover the value of that horse. [2]

" 7. The jury have a right to consider, in the making up of their verdict, the manner in which the judgment of A. L. Kitch-

en v. Joseph Kitchen was obtained, as detailed by the justice, the manner in which the sale was conducted, as to who the persons were who were present, and the bidding, etc., and if the jury is satisfied from the evidence that the judgment, and sale in pursuance of it, were fraudulent, and intended to hinder, delay and defraud the creditors of Joseph Kitchen, their verdict should be for the defendant. *Answer:* Gentlemen of the jury, we cannot affirm that point, because, in the view we take of this case, after all that would be submitted to you, there would not be sufficient submitted to you to establish fraud or collusion, or a combination to hinder and cheat and defraud the creditors of Joseph Kitchen by what occurred there, and therefore no judgment could be entered on your verdict if you were to find and base a verdict upon those acts. As we stated before, when fraud is alleged it must be proven by substantive proof. The presentation of acts which are at most suspicious are not sufficient. The proof of fraud must be sustained by testimony that is of sufficient character to bear with it a conviction of the alleged fraudulent acts, and we do not think that in this case there has been proof of such acts which would justify us in submitting the question of fraud to the jury, so that that leaves but one single question for you to pass on, namely, what was the value of those two horses ? . . . . Plaintiff is entitled to recover, we think, in this case, the value of the property, and whether or not you will allow anything additional to that is a matter which we leave entirely with you." [4]

*Errors assigned* were (1–5) answers to points; (6) ruling on evidence, quoting points and answers and bill of exception; (7) refusing to submit facts to jury and instructing jury to find for plaintiff.

*Frank Fielding*, for appellant.—When the levy was made a right of action accrued to Pennington, and to no one else, as his possession alone was disturbed: Dixon v. Machine Co., 128 Pa. 397, 405, 406. To maintain trespass, plaintiff must have possession or right of possession : Gloss v. Black, 91 Pa. 418, 421; Creps v. Dunham, 69 Pa. 456, 460; Becker v. Smith, 59 Pa. 469, 473; Weitzel v. Marr, 46 Pa. 463, 464; at the time of doing the act complained of: Lewis v. Carsaw, 15 Pa. 31,

34; Waldron v. Haupt, 52 Pa. 408, 410, 411. The court erred in stating that Pennington returned the horse, and while this is corrected in another part of the charge, both statements appear.

Although the judgment covered an actual debt, if it was intended to defraud creditors it was void: Barrett v. Nealon, 119 Pa. 171, 176 ; Renninger v. Spatz, 128 Pa. 524–7 ; Covanhovan v. Hart, 21 Pa. 495. And this should have been left to the jury.

The judgment was confessed by one brother to another before a justice of the peace on judgment notes, execution immediately issued, a sale, conducted with few bidders and unusual rapidity, at under prices, and property returned to defendant in the execution. All these facts were evidence of fraud. The offer to show other debts was to prove a motive to get the property out of the reach of creditors. It should have been received under McMichael v. McDermott, 17 Pa. 353. That case is authority for the position that where the execution creditor is both buyer and seller, there is a conclusive presumption of collusion.

The evidence was sufficient if it should satisfy the jury beyond a reasonable doubt : Young v. Edwards, 72 Pa. 257, 267. Fraud may be inferred from facts calculated to establish it: Kaine v. Weigley, 22 Pa. 180.

*S. V. Wilson,* with him *T. H. Murray,* for appellee.—We had the right of possession of the horse before the sale, and this was sufficient: Creps v. Dunham, 69 Pa. 456 ; Dixon v. Machine Co., 128 Pa. 405. It was the sale, after notice before sale, that made the sheriff a trespasser. The question of notice affects damages only, making them exemplary or compensatory: Nagle v. Mullison, 34 Pa. 48. If the sheriff had withdrawn the levy after notice, the horse must have been returned to plaintiff. If plaintiff has no remedy against the sheriff he is without remedy. The bond of indemnity was given for his benefit.

There was no evidence to support the third point. A confession of judgment by one brother to another is no badge of fraud: Reehling v. Byers, 94 Pa. 316. Fraud must be clearly proven : Brown v. McCormick, 135 Pa. 434. Plaintiff was not

connected with any collusive Act of fraud.   There is nothing to impeach the judgment, and for any irregularity in the execution process, defendant therein can alone complain: Tarr v. Eddy, 142 Pa. 415.   It was not the case of one bidder as in Ricketts v. Unangst, 15 Pa. 91.   Plaintiff had right to buy: Kline v. McCandless, 139 Pa. 229.   And leave property in possession of former owner: Maynes v. Atwater,  88 Pa. 496. Plaintiff had right to prefer whom he pleased: Harris' Ap., 5 Cent. R. 553.

OPINION BY MR. JUSTICE GREEN, July 13, 1892.

First and second assignments.   There is no doubt that the transaction between Andrew L. Kitchen and Pennington after the levy, when Kitchen refunded to Pennington the money which Pennington had paid him for the horse, was a rescission of the sale of the horse by Kitchen to Pennington.   As between them Kitchen thereby became entitled to the possession of the horse and also to the property in him.   Pennington did not have the possession as the horse had been taken by the sheriff under his levy.   When he accepted from Kitchen the money for the price of the horse, he no longer had any title in the horse or any right of possession.   The property in the horse, after the rescission, was vested again in Kitchen, and the right to have the possession followed the title and could be asserted as against any wrong-doer.   No actual delivery of possession by Pennington to Kitchen was necessary to perfect Kitchen's title.   Creps v. Dunham, 69 Pa. 456.   The authorities cited by the learned counsel of the appellant in his argument upon the first and second assignments are undoubtedly correct and certainly apply in all cases where there was a levy and no change of title between the levy and the sale.   But the sale by the sheriff, of goods levied upon by him and claimed by a stranger, is a distinct and substantial trespass which entitles the real owner to his remedy by action of trespass.   In the present case the sale was not made until after Pennington had parted with his title by the rescission of the contract of purchase between Kitchen and Pennington.   He no longer had any kind of title in the horse and Kitchen became the owner of any title which Pennington had prior to the act of rescission. As there is no other claimant of the title of Pennington, any

right of action which he may have had passed to Kitchen by virtue of the rescission. It is clear that Pennington could maintain no action against the sheriff in such circumstances, and we know of no reason why Kitchen might not assert his right of property by an action based upon the act of trespass committed by the sheriff in selling the horse thereafter.

In the case of Dixon v. White Sewing Machine Co., 128 Pa. 397, we held that to maintain trespass for a mere levy upon the goods of a stranger the plaintiff must have had, at the time of the levy, either actual possession or the right to take possession, but for a sale of the goods an action may be supported upon a reversionary or conditional right of possession. In that case Dinkle as agent for the plaintiff claiming the goods—organs—had made conditional sales in the form of leases, under which the organs had been delivered to the proposed purchasers and were in their possession at the time of the levy. They had been levied on by Dinkle's creditors, who claimed they were his property. The sheriff returned that he had levied on Dinkle's interest in them and had sold only that interest, and it was claimed for the defendant, the sheriff, that as only Dinkle's interest was sold, and that, at the time of the levy, the goods were in possession of other parties, the conditional purchasers, the action could not be maintained. Our brother Mitchell, meeting this objection, and recognizing the familiar doctrine that the plaintiff in an action of trespass must have the possession or right of possession at the time of the levy, said: "But Dinkle either for himself or as agent of the plaintiff had still a title in the organs, to which a reversionary and conditional right of possession attached, and a sale of the goods themselves by the sheriff would be such an interference with this title and consequent right of possession as would support an action." This distinction is quite correct and would seem to be applicable to the rather unusual facts that are present in this case. At the time of the levy, Pennington was the owner and in possession, and if there were no change in the situation, no action could have been maintained by Kitchen. But his action was not brought until after the sale by the sheriff, and at that time, he, if he was the true owner of the horse, is the only person injured and his injury was occasioned by the sale. Pennington had

no interest of any kind either in the possession, or in the property at the time of the sale, or at the time of the action brought. Kitchen was the owner, if his title were good, and being the only person injured he was clearly entitled to bring the action. No action had been brought by any one for the disturbance of the possession by the levy, and as the sale was an undoubted trespass, as against Kitchen, he alone had the right of action. The first and second assignments of error are not sustained.

Third and fourth assignments. The third point of the defendant is undoubtedly sound, and might have been affirmed as a mere abstract proposition. The only reason why it was not affirmed was because the learned court below was of opinion that there was no evidence in the cause which would have justified the submission to the jury of the question of fact which was involved in the point. After a most careful reading of the testimony we are of opinion that the learned court was entirely correct in this view of the testimony. We really cannot see any foundation of fact in the testimony upon which to base either a charge of an intent, in the confession of the judgment, to hinder, delay and defraud the creditors of Joseph Kitchen, or that there was fraud in fact either in the giving of the judgment, or in the sale under the execution. There is not a scrap of testimony to impugn the full actual consideration of the judgment. The magistrate who entered the judgment testified fully to every fact and circumstance attending its confession and entry. He said the defendant in the judgment called upon him and said he was indebted to his brother, A. L. Kitchen, that he could not pay him and wanted to make as little costs as possible and therefore he wanted to confess a judgment in his favor for the amount of the debt. The justice inquired as to the consideration and was informed as to the whole of it, that the defendant owed his brother for three notes he held against him and a book-account. The amount was footed up and judgment confessed for the whole. Afterwards on the same day he met the plaintiff and inquired of him about it and said he would require the notes to be delivered to him, the justice, as they were "docket property." On the same evening A. L. Kitchen brought him the notes and left them with him and directed him to issue an execution the next day.

The notes themselves were produced in court and given in evidence. They are all judgment notes, given at different times, for different sums, all of which were small, and executed under seal. One of them was given to the wife of A. L. Kitchen and by her transferred to her husband. There was not a fragment of testimony in the cause to impeach the consideration of the notes or of the judgment. Being executed under seal they imported consideration. We discover nothing in the circumstances attending the confession of the judgment, in any degree suspicious or inconsistent with perfect good faith. It was the right of the defendant to confess the judgment in favor of his brother if he honestly owed him the money, and equally the right of the brother to receive the confession and issue execution for the collection of the money, without being chargeable with fraud because the defendant was his brother.

In the case of Reehling v. Byers, 94 Pa. 316, Mr. Justice Gordon, in the case of a transfer of real estate from a son nearly or quite insolvent, to his father, said: " Business dealings between parents and children and other near relatives, are not *per se* fraudulent. They must be treated just as are the transactions between ordinary debtors and creditors. As in the latter case, where the *bona fides* of such transactions is attacked, the fraud alleged must be clearly and distinctly proved, so likewise in the former." The judgment of the court below was reversed because the question of fraud was submitted to the jury, when in the opinion of this court there was no evidence sufficient to warrant such submission.

Some very trivial circumstances were claimed by the appellant, in the present case, to be evidence of fraud, such as the fact that Joseph R. Kitchen came to the office of the justice alone and without any books and papers when he confessed the judgment, that only a few persons were present at the sale, a part of whom were near relatives, that there was a dispute about one or two bids, that the horses sold were worth considerably more than they brought at the sale, and that the sale was completed in about twenty minutes. Such facts as these constantly transpire at judicial sales, but unless there is some kind of proof showing, or tending to show, actual fraud in the transaction, they are not of the slightest significance and of themselves prove nothing worthy the consideration of a jury.

The solemn judgments and executions of creditors are not to be swept away by any such testimony as this without some kind of substantial proof. The third and fourth assignments are not sustained.

The fourth point of the defendant asked the court to charge that the constable's sale was void in law, because there were no persons present at the sale, " but the plaintiff and defendant who were brothers, and their brother and nephew, the constable and his clerk." As a matter of course such a point could not have been affirmed without grave error and it was therefore refused. In point of fact other persons were present at the sale and so testified. The fifth assignment is not sustained.

Sixth assignment. The only object of the offer to give other judgments against Joseph R. Kitchen in evidence, was to show that he was in debt to other persons at the time he confessed the judgment. As the mere fact of other indebtedness would not invalidate, or even tend to invalidate, the judgment confessed to A. L. Kitchen, without some other evidence tending to impeach the good faith of the transaction, the offer was not competent. As we have often held, one who is in debt to different persons may give a preference to any one, and the fact of the other indebtedness weighs nothing against the validity of the preference. The sixth assignment is not sustained.

The court below was not asked to give a binding instruction for the defendant and there is therefore nothing to sustain the seventh assignment.

Judgment affirmed.