Pearl Assurance Company, Ltd. *v.* National Insurance Agency, Inc., et al., Appellants.

266

Argued October 15, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, RHODES and HIRT, JJ.

*Albert M. Hankin,* for appellants.

*C. Laurence Cushmore, Jr.,* with him *White & Staples,*
for appellee.

PER CURIAM, September 30, 1942:
This was an action of trespass brought by an insur-
ance company against a corporate insurance broker—
which seems to have been a 'one-man' corporation—and
the 'one-man' individual who was its president, and
himself performed all the acts complained of, for the
recovery of some twenty-two hundred dollars damages,

sustained by the plaintiff in consequence of the alleged unlawful conversion by them of the net premiums on certain insurance policies, which had been intrusted to them by plaintiff for the purpose of delivering the policies and collecting the premiums from the insured or their insurance brokers—where there was an overwriting broker—and remitting the net proceeds, after deducting their commissions, to the plaintiff insurance company.

After the filing of an affidavit of defense, a pre-trial conference was had, which resulted in the parties entering into a stipulation as to facts; and the case was then submitted to a judge—sitting without a jury—for decision on the facts as stipulated.

The trial judge made certain findings of fact in accordance with the stipulations, and on the basis of these findings and his conclusions of law from them, decided that the plaintiff was entitled to judgment against both defendants in the amount of $1,855.57, the difference between that figure and the amount claimed by the plaintiff representing premiums that had not been actually received by the defendants.

Exceptions to the findings and conclusions of the trial judge were dismissed and judgments were entered for the plaintiff and against the defendants in accordance with the decision of the trial judge. Defendants severally appealed.

The corporate defendant did not deny its liability in *assumpsit* for the *full amount claimed by the plaintiff;* but it denied any liability in *trespass,* based principally on the point that it was licensed as an insurance *broker,* not as an insurance *agent,* under the Insurance Department Act of 1921, P. L. 789, and its amendments—Sections 601, 621, etc.—40 P. S. §§231 and 251. And the individual defendant denied any liability, on the ground that he was acting only as the agent of the corporate defendant.

We are all of the opinion that the division of representatives of insurance companies by the Insurance Department Act into insurance agents and insurance brokers does not prevent an insurance broker from acting as an agent of an insurance company in the *collection* of the premium from the insured and paying it over to the insurance company. See *Gosch v. Firemen's Ins. Co.*, 33 Pa. Superior Ct. 496. One does not have to be licensed as either an insurance broker or insurance agent to do this. Any person, or any corporation whose business bears any relation to insurance, or to the delivery of papers, deeds, contracts, etc. may be authorized by an insurance company to deliver a policy and collect the premium; and when so collected, the duty attaches to pay over the amount so received, less the costs, etc. incident thereto, to the insurance company. As pointed out in *Transcontinental Oil Co. v. Atlas Assurance Co. Ltd.*, 278 Pa. 558, 123 A. 497, the purpose of Article VI (P. L. 810) of said act was to compel registration of the classes of individuals named, and to prohibit the doing of certain acts declared unlawful. "There is nothing in the statute relied upon which may be said to change the well-established rule that the insured, in making payment, may safely rest on the implied authority to receive the premium, which the company confers on the person to whom the policy has been given for delivery". (P. 565).

However, the judge of this court, to whom the case was first assigned, in his examination of the law, found a case *(Life Association v. Catlin, 2 Walker 338)*, which the industry of counsel on both sides had not brought to our attention. In that case the Supreme Court affirmed the judgment of the court below (TRUNKEY, P. J.) and held that an action in *trover* would not lie by an insurance company to recover the amount of premiums on policies received by the defendant as its agent, on which he was to receive a percentage as his

commission or compensation. The court said: "It is too clear for argument that trover was not the proper form of action in this case. It was for the amount of premiums on policies of life insurance received by the defendant as an agent of the plaintiffs for which he was to have a percentage. When he received the money he was simply liable to account and pay over the balance. There was no obligation to pay the identical coin or note, or notes he had received." This was followed by this court in *Cherry v. Paller*, 91 Pa. Superior Ct. 417, an action brought for the alleged conversion of money received by defendant as authorized agent for the collection of rents for the plaintiff principal. In affirming the lower court, which sustained defendant's affidavit of defense raising a question of law, this court said, speaking through PORTER, P. J., "The relation between these parties, averred in the statement, was that of principal and agent. There was an entire absence of any averment of a contract, or circumstances, which imposed an obligation on the defendant to keep the coin, bank notes or checks received from the tenants who paid the rents separate from other funds and return the identical coins, bills or checks to the plaintiff. The averments of the statement, if true, establish that the money was lawfully received by this defendant. It is, therefore, clear that those decisions which hold that when one has come into the possession of property of another through force, fraud, other unlawful means, or mistake, and converts that property to his own use an action of trespass will lie, have here no application. This defendant having, as agent, lawfully received the coins, bills or checks, and being under no obligation to do any particular thing with regard to said specific property, might have discharged himself from all liability, either in assumpsit or trespass, by paying over to his principal, the plaintiff, an equal sum in money. The facts averred by plaintiff were not sufficient to afford

a foundation for an action of trover, or any other form of trespass. The action of trover has not been used to recover on unadjusted accounts, nor on accounts stated, although, for many generations, agents have often appropriated money received for the use of their principals: *Life Association v. Catlin*, 2 Walker 338; *Davis v. Thompson*, 10 Sadler 563; *Sutterly v. Fleshman*, 41 Pa. Superior Ct. 131." (P. 420).

But a majority of the court are presently of opinion that acts of assembly passed since 1875, when *Life Association v. Catlin*, 2 Walker 338, was decided, warranted an action of trespass for the tortious conversion of *money*, even though the *identical* specie or currency was not required or intended to be delivered to the plaintiff.

We have departed widely from the old common law action of trover and conversion. Originally it was designed for cases where goods had been *lost* and were *found* [1] and had been converted, without right, by the finder to his own use. In such case the owner of the goods, or one having a general or special property in them, might sue the finder in trover to recover the *value* of the goods so wrongfully converted.

The remedy was extended to the wrongful conversion of goods which had not been lost and *found;* [2] but instead of issuing a new writ of trespass on the case applicable to such circumstances, resort was had to the action of trover, by the use of a fiction, which required the plaintiff to aver (1) a loss and (2) a *finding*—although there had been none—which averments were not traversable, followed by an averment of wrongful conversion, which was the gist of the action.

We have long since abandoned the use of the fiction

---

[1] The word 'trover' is Old French for 'to find'.

[2] See Prof. James Barr Ames' Essay on History of Trover, Select Essays in Anglo-American Legal History, Vol. 3, p. 417, etc.

—so much so that many lawyers are wholly unaware of its history—but we have insisted on retaining many of the outworn and outmoded incidents of the original common law action.

By the Act of May 25, 1887, P. L. 271, the General Assembly abolished the distinctions, *so far as related to procedure,* between actions *ex delicto,* and provided that all damages theretofore recoverable in trespass, trover, or trespass on the case, should thereafter be sued for and recovered in one form of action, to be called, 'action of trespass'.

We think that it was the intention of the legislature that all damages thereafter growing out of a civil wrong or tort, or delict, *(ex delicto),* could be recovered in an action of trespass.

By the Act of May 18, 1917, P. L. 241,[3] it was provided that any person having received or having possession, in any capacity or by any means or manner whatever, of any money or property, of or belonging to any other person, firm or corporation, or which any other person, firm or corporation is entitled to receive and have, who fraudulently withholds, converts or applies the same, or any part thereof, or the *proceeds* or any part of the *proceeds,* derived from the *sale or other disposition* thereof, to and for his own use and benefit, or to and for the use and benefit of any other person, shall be guilty of a misdemeanor, etc.

It is clear that this act applied to cases where it was not essential that the identical money or property received be turned over to the person, etc., entitled to it, as well as to those where it was.

---

[3] Repealed, but substantially re-enacted by the Penal Code of June 24, 1939, P. L. 872, sec. 834, except that the Code makes the offense a felony. But the Code went into effect September 1, 1939, which was after the cause of action in this case arose, and therefore, did not affect it. The Act of 1917, P. L. 241 was not considered or referred to in the decision in *Cherry v. Paller,* supra.

After its passage, and until its repeal, it was a public wrong or misdemeanor wrongfully to convert to one's own use money or property, or the proceeds of the same, belonging to another, which was lawfully received by, or which came lawfully into the possession of, the defendant; and being such, it was also a civil wrong, or tort, against the party injured, for which damages could be recovered by him in an action of trespass.

In these days, when, by Congressional action, gold is out of circulation, and United States notes, Federal Reserve Bank notes, and silver certificates have become the only lawful currency, and when banks are so numerous and convenient that no prudent agent would think of holding money in his possession until he could deliver it to his principal, but business transactions are almost wholly by check, it seems absurd to cling strictly to the incidents of an action that was outmoded centuries ago, and refuse the remedy by action of trespass to a wrongful conversion of money, just because it was not incumbent on the tort-feasor to deliver to his principal the identical currency bills or check that he had received.

The offense of 'fraudulent conversion' was a misdemeanor, not a felony, at the time the present cause of action arose. Exhibit A attached to the plaintiff's statement and embodied in the stipulation of facts, which formed the basis of this action, as determined by the trial judge, shows that *all but $60.47* of plaintiff's claim for over $2,200, alleged to have been received and converted by defendants, was received in 1938, and *all of it* was so received and converted prior to September 1, 1939, the effective date of the Penal Code of 1939.

This Commonwealth—at least, since the passage of the Criminal Procedure Act of 1860, P. L. 427, see section

71, p. 447 [4]—has not followed the early common law doctrine—(See 1 C. J. S.—Actions, sec. 11, pp. 994-996) [5]—that a statute which declares a given act to be a felony and attaches a punishment thereto, furnishes the exclusive remedy for the wrong and an offense against its provisions may not be made the basis for a civil action for the recovery of damages. The doctrine never did apply to misdemeanors, such as this offense was, if and when it was committed. While to *compound a felony* is a crime, it is not unlawful to *settle a*

---

[4] "Section 71. In all cases of felony heretofore committed, or which may hereafter be committed, it shall and may be lawful for any person injured or aggrieved by such felony, to have and maintain his action against the person or persons guilty of such felony, in like manner as if the offense committed had not been feloniously done; and in no case whatever, shall the action of the party injured, be deemed, taken or adjudged to be merged in the felony, or in any manner affected thereby". Act of March 31, 1860, P. L. 427, p. 447. See also, *Hutchinson v. Merchants' & Mechanics' Bank of Wheeling,* 41 Pa. 42, 43, 45; *Keyser v. Rodgers,* 50 Pa. 275, 281; *Wilson v. Wilson,* 100 Pa. Superior Ct. 451, 452, 458; *Bobereski v. Insurance Co. of Penna.,* 105 Pa. Superior Ct. 585, 592, 593, 161 A. 412, 414; Penal Code of 1939, P. L. 872, sections 1102 and 1103.

[5] "It is elementary that a person may offend against the state, and also be liable for civil damages or other relief growing out of the same offense, as every criminal act which injures the person or property of another is also a civil tort redressable by the courts. As a general rule, therefore, notwithstanding an act constitutes a criminal offense, if it also constitutes a civil wrong, an action for damages may be maintained against the wrongdoer by the person injured, for any special injury peculiar to himself in his individual capacity and not merely as a member of the community". Supra, p. 994. See cases where actions of trespass have been sustained for damages resulting from the unlawful employment of minors, etc., contrary to the provisions of a statute which made their violation a criminal offense: *Stehle v. Jaeger Automatic Machine Co.,* 220 Pa. 617 620, 69 A. 1116; 225 Pa. 348, 74 A. 215; *Sullivan v. Hanover Cordage Co.,* 222 Pa. 40, 70 A. 909. See also, *Rebel v. Standard Sanitary Mfg. Co.,* 340 Pa. 313, 16 A. 2d 534.

*misdemeanor.* The books are full of cases where a civil action for damages, based on an act constituting a misdemeanor, has been sustained.

While these represent the present views of a majority of the court, most of what has been discussed here was not argued before us or in the court below, and we have not had the benefit of the help or assistance of counsel on these matters. We feel that it is only fair to them, as well as to the court, that an opportunity be given them to express their views and support them by oral argument. We have gone into the matter thus fully in order that they may have a better knowledge of the points upon which we desire a re-argument of the case.

Re-argument ordered.