Druckenmiller *v.* Kuzenski, Appellant.

Argued March 21, 1956. Before HIRT, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (RHODES, P. J. and GUNTHER, J., absent).

*Harry P. Creveling,* with him *David Freeman,* for appellant.

*Joseph F. Fruhwirth, Jr.,* with him *James C. Lanshe,* for appellee.

OPINION BY ERVIN, J., July 17, 1956:

This is an action in trespass for conversion of articles of personal property. The plaintiff obtained a verdict. Defendant appealed after the dismissal of his motions for a new trial and judgment n.o.v. The principal question for our determination is whether there was a conversion of the articles.

The facts of the case are that plaintiff carried on a tombstone business on defendant's premises, on which plaintiff had erected a frame building 20 feet by 24 feet. On May 1, 1946 the parties entered into a written agreement of sale for one acre of defendant's ground, including the land on which the building was erected, for $1,300.00, payable $100.00 down, $500.00 on July 1, 1946 and the balance at the end of one year from the date of the agreement. Plaintiff paid the

$100.00 down payment and $200.00 on the next payment and never paid anything else.

Prior to June 1949 defendant told the plaintiff to remove his personal property from the premises. The plaintiff failed to remove the same.

In November 1949 defendant posted "No Trespass" signs upon the land in question and caused plaintiff to be arrested and haled before Justice of the Peace Roy H. Peterson, where plaintiff posted bail for $25.00. At a hearing at which defendant's attorney was present, plaintiff was ordered to keep off the premises or suffer future arrests. Upon his promise to do so, he was released and later the charge was dropped and plaintiff's bail money returned to him.

In February 1951 the defendant sold his entire farm, including the plot in question with the building thereon, to one C. Ralph Hittinger, who in turn sold the personal property in the building to one Raymond Martin.

A dispossession may be committed by one who intentionally bars the possessor's access to a chattel. Restatement, Torts, §221 (c).

In Pennsylvania it has been held that barring an owner from obtaining possession of his property in itself constitutes a conversion without the formality of demand and refusal. *Watts v. Lehman,* 107 Pa. 106; *McKay v. Pearson,* 6 Pa. Superior Ct. 529, 535; *Bernstein v. Hineman,* 86 Pa. Superior Ct. 198; *Berry v. Heinel Motors, Inc.,* 162 Pa. Superior Ct. 52, 56 A. 2d 374; *Cohen v. Bernard,* 65 D. & C. 489, 495.

It is true that the defendant in November 1949 posted "No Trespass" signs upon the land in question and further caused plaintiff to be arrested and at the hearing before the justice of the peace exacted a promise from the plaintiff to keep off the premises or suffer

future arrests. This action, however, came after the plaintiff had for approximately three years defaulted in carrying out his agreement of purchase of the land in question. Furthermore, the plaintiff himself admitted that the defendant had written three or four letters to him prior to his arrest and in at least one had requested plaintiff to remove his personal property. The plaintiff further admitted that he failed to remove his personal property. This was conclusive evidence that plaintiff was not barred by the defendant from removing his personal property. The defendant's request to the plaintiff to remove the personal property is totally inconsistent with an intention to convert the same. Furthermore, the plaintiff could have asked, at the hearing, for permission to remove his personal property but he did not do so.

At the trial plaintiff's attorney attempted to prove that defendant sold the personal property to one C. Ralph Hittinger. Hittinger was called by the plaintiff and testified in direct examination as follows: "A. That building was with the farm. Q. Did they also say that the tools inside of that building went with the farm? A. He didn't say there were tools in there. Q. You found some in there? A. Yes, when I went over, the windows were out and the doors were off. . . . Q. Mr. Hittinger, with respect to the tools that you did find in the building, what did you do with those? A. I sold them. Q. You sold them to whom? A. Mr. Martin. Q. Did Mr. Druckenmiller give you any authority to sell them? A. I didn't know Mr. Druckenmiller until September. I didn't know who owned the place at all. Q. You didn't know him until September, and that was after the tools were sold to Mr. Martin? A. This man came up and said, 'You sold my tools.' I said, 'I don't know you.' He handed me his card. I said, 'You go

and talk to Mr. Creveling.' Q. Mr. Creveling represented you at the time? A. Yes. Q. Did anyone give you authority to sell those tools? A. I called Mr. Creveling. I wanted to get rid of the building. It was taking ground up. He said, if I wanted to get rid of it, I purchased the farm and that went with the farm. Q. That is what you were told, that they went with the farm? A. Just the building, not the tools. Mr. Kuzenski didn't know the tools were there; neither did I. When I got there, there were no doors and windows, only a couple tools. Q. You sold those tools to Mr. Martin? A. Yes." Upon cross-examination Mr. Hittinger testified as follows: "Q. Mr. Hittinger, at the time the contract was entered into, there was nothing stated about any tools? A. No, sir. Q. You didn't know there were any tools in the building? A. No. Q. Mr. Kuzenski didn't say anything to you about there being tools in the building? A. No. Q. You were told that the building went with the farm? A. Went with the farm." This is clear evidence coming from plaintiff's witness that defendant did not sell the personal property to Hittinger, even though Hittinger took it upon himself to sell them to Martin. Hittinger should not be criticized too severely because the plaintiff had failed, after request, to remove his personal property from premises which Hittinger had purchased and wanted to use. At any rate, defendant could not be held liable for damages for a conversion which he did not make and never intended to make. The plaintiff, having failed to prove that defendant sold the personal property, had the burden of proving that he had made a demand upon the defendant for the return of the personal property and that defendant had refused to return the same. Plaintiff not only failed to show the demand and refusal but, on the contrary, proved that

the defendant had requested plaintiff to remove the personal property and that he, the plaintiff, had failed to do so.

We are of the opinion that plaintiff having failed to prove the essential ingredients of a case, the learned lower court erred in not entering a judgment non obstante veredicto.

This disposition of the case makes it unnecessary to consider the other question raised by this appeal.

Judgment reversed and here entered for the defendant, with costs upon the plaintiff.