Joseph C. BARAM

v.

Robert FARUGIA, Glenn S. Hackett and Dennis Fredella,

Robert Farugia and Glenn S. Hackett, Appellants.

No. 78–1770.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 8, 1979.

Decided Sept. 24, 1979.

Joseph P. Mylotte, Ackerman & Mylotte, Media, Pa., for appellants.

Peter J. Verderame, Langhorne Manor, Pa., for appellee.

Before ALDISERT and WEIS, Circuit Judges, and DIAMOND, District Judge.*

OPINION OF THE COURT

ALDISERT, Circuit Judge.

█ In this age of space travel and computer technology, a horse named Foxey Toni requires us to return to a more tranquil era and examine elements of trover and conversion under Pennsylvania common law. We must decide in this diversity case whether payment of the horse's full value to the owner by one converter precludes recovery by the original owner in a conversion action against persons who received

---

* Honorable Gustave Diamond, of the United States District Court for the Western District of Pennsylvania, sitting by designation.

possession from the original converter. We hold that recovery from the first converter precludes further recovery of compensatory or punitive damages for subsequent conversions, and we reverse the judgment of the district court.

Dr. Joseph Baram, appellee, acquired legal title to Foxey Toni, a bay filly race horse, for $3,000 in a claiming race at the Keystone Race Track, Bucks County, Pennsylvania. Dennis Fredella became the trainer for Foxey Toni and was given authority to enter her in races in Dr. Baram's name. Foxey Toni raced under Dr. Baram's name on October 11, October 17, and November 8, 1975. Thereafter, a Certificate of Foal Registration for the horse, issued by the Jockey Club of America, came into Fredella's possession at a time when he was indebted to appellant Robert Farugia. Without the knowledge or consent of Dr. Baram, Farugia obtained possession of the horse from Fredella and was given the foal certificate bearing the forged signature of Dr. Baram. The district court found that both Fredella and Farugia knew or should have known that the signature on the foal certificate had been forged and that Fredella had no authority to transfer Foxey Toni. Record at 2–88 to 2–89.

Farugia first dated the certificate, transferring the horse to himself, and then transferred her to appellant Glenn Hackett and himself. Foxey Toni was subsequently raced in Canada by the putative new owners without the knowledge or consent of Dr. Baram. After Dr. Baram learned of these events, he met with Farugia and demanded the return of Foxey Toni. Farugia refused to return the horse or pay her value of $3,000, but offered instead a modest cash settlement. Dr. Baram rejected the settlement offer and initiated litigation.

Dr. Baram filed a complaint sounding in "Trespass for Conversion," Appendix at II, in the district court against Farugia, Hackett, and Fredella. A default judgment for failure to appear was entered against Fredella. Dr. Baram acknowledged at trial that, as a result of previous criminal proceedings against Fredella in state court, he had been paid $3,000 by Fredella covering Dr. Baram's claim "for the value of the horse, Foxey Toni," and that he "agreed to accept that." Record at 72, 73. This case then proceeded as a bench trial for compensatory and punitive damages for conversion against Farugia and Hackett. The court awarded compensatory damages of $3,000 against both defendants for the value of Foxey Toni and assessed punitive damages of $5,000 against Farugia. The court dismissed the complaint against Fredella with prejudice. This appeal by Farugia and Hackett followed.

Appellants argue that the judgment must be reversed because the $3,000 payment by the converter Fredella for the value of the horse extinguished any further claim in conversion by Dr. Baram. We agree with appellants' argument and are satisfied that conversion under the common law of Pennsylvania may be conceptualized as follows. Conversion is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession. The tort is predicated on interference with dominion or control over the chattel incident to some general or special ownership rather than on damage to the physical condition of the chattel.[1] A person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel, by intentionally using a chattel in his possession without authority so to use it, by receiving a chattel pursuant to an unauthorized sale with intent to acquire for himself or for another a proprietary interest in it, by disposing of a chattel by an unauthorized sale with intent to transfer a proprietary interest in it, or by refusing to surrender a

---

1. *See Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 435 Pa. 57, 60–61, 254 A.2d 637, 638–39 (1969); *Baker v. Rangos*, 229 Pa. Super. 333, 348, 324 A.2d 498, 505 (1974); *see also* W. Prosser, Handbook on the Law of Torts § 15, at 81 (2d Ed. 1964) (hereinafter cited as Prosser).

chattel on demand to a person entitled to lawful possession.[2]

The modern law remedy for conversion has emerged from the common law action of trover, which was premised on the theory that the defendant had appropriated the plaintiff's chattel, for which he must pay. *Pearl Assurance Co., Ltd. v. National Ins. Agency, Inc.,* 150 Pa.Super. 265, 270–71, 28 A.2d 334, 337 (1942) (per curiam), *aff'd on reargument,* 151 Pa.Super. 146, 30 A.2d 333 (1943). A plaintiff who proved conversion in a common law trover action was entitled to damages equal to the full value of the chattel at the time and place of conversion. *Berry v. Heinel Motors, Inc.,* 162 Pa.Super. 52, 58, 56 A.2d 374, 377 (1948). According to Professor Prosser,

> [w]hen the defendant satisfied the judgment in trover, the title to the chattel passed to him, and the plaintiff had nothing more to do with it. The effect was that the defendant was compelled, because of his wrongful appropriation, to buy the chattel at a forced sale, of which the action of trover was the judicial instrument.[3]

Pennsylvania courts have long recognized the forced sale aspect of conversion actions. *Singer Sewing Machine Co. v. Yaduskie,* 26 Pa. County Ct. 298, 300 (1902).

The title-passing and forced-sale concepts distinguished trover from the common law action of trespass, which was premised on the theory that the plaintiff remained the owner of the chattel and was entitled only to the damages he had sustained through loss of possession, and from the action of replevin, which also left title in the plaintiff and returned the chattel to his possession. *See id.* at 299. The modern day tort of conversion retains the conceptual underpinnings of trover and is generally applicable only to cases such as this one in which there has been a major or serious interference with a chattel or with the plaintiff's right in it.[4] It is the seriousness of the interference that justifies the forced judicial sale to the defendant, described by Prosser as "the distinguishing feature of the action."[5] The Restatement (Second) of Torts preserves this conceptual basis:

> When the defendant satisfies the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale. Conversion is therefore properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value.

§ 222A, Comment c (1965). Although Pennsylvania law is unclear about whether title passes on entry of judgment against the

---

2. Restatement (Second) of Torts § 223 (1965). The earliest recorded Pennsylvania conversion decision is *Taxier v. Sweet,* 2 Dall. 81 (Pa. 1766). *See also Kitchen v. McCloskey,* 150 Pa. 376, 24 A. 688 (1892); *Perdue v. Taylor,* 146 Pa. 163, 23 A. 317 (1892); *Senft v. McIlvain,* 43 Pa.Super. 518 (1910).

3. Prosser, *supra* note 1, at 80 (citing Hale, Bailments 188 (1896); *May v. Georger,* 21 Misc. 622, 47 N.Y.S. 1057 (1897)).

4. The Pennsylvania Practice Act of 1887 provided: "So far as relates to procedure, the distinctions heretofore existing between actions ex delicto [are] abolished, and . . . all damages, heretofore recoverable in trespass, trover, or trespass on the case, shall hereafter be sued for and recovered in one form of action, to be called an 'action of trespass,'" P.L. 271, § 2, *formerly codified as* 12 P.S. § 2, *repealed by* Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [749]. The Pennsylvania Procedural Rules now provide the procedure in the state courts under rules promulgated under the constitutional authority of the Pennsylvania Supreme Court. *See* Pa.Const. Art. 5, § 10(c). *See also* Pa.R.Civ.P. 1041. The Pennsylvania action in trespass now affords the same relief formerly available by the action of trover. *See Pearl Assurance Co., Ltd. v. National Ins. Agency, Inc.,* 150 Pa.Super. 265, 271, 28 A.2d 334, 337 (1942) (per curiam), *aff'd on reargument,* 151 Pa.Super. 146, 30 A.2d 333 (1943); *King v. National Union Fire Ins. Co.,* 30 Fay. L.J. 33, 35 (Fayette C.P.1967) (in banc). Pennsylvania courts construed the Practice Act narrowly to avoid derogation of the substantive protections of the common law. *Wolfe v. Pennsylvania Co. Ins. Lives & Granting Annuities,* 322 Pa. 344, 346, 185 A. 292, 293 (1936).

5. Prosser, *supra* note 1, at 81. *See Fox v. American Propane, Inc.,* 508 S.W.2d 426, 428 (Tex.Civ.App.1974).

converter or only when the converter satisfies the judgment,[6] the rule recognized in most states is that title to the chattel passes only when the judgment against the converter is satisfied.[7] We need not venture our opinion on how the Pennsylvania courts would resolve this question, however, because in this case both the judicial order that Fredella pay the value as a condition of his probation and actual payment of $3,000 to Dr. Baram, events related to the first conversion, preceded judgment on the second claim. This sequence indicates that title passed to Fredella at some point prior to judgment in the second action. We now apply these precepts to the uncontroverted facts presented at the trial below or as specifically found by the fact finder.

Conversion as recognized under Pennsylvania common law occurred on November 29, 1975, when Fredella transferred Foxey Toni's foal certificate and delivered possession of her to Farugia. This was a classic example of intentionally dispossessing another of his chattel, using a chattel in a bailee's possession without authority so to use it, and disposing of a chattel by sale without authority and intending to transfer a proprietary interest in it. *See Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 435 Pa. 57, 60–61, 254 A.2d 637, 638–

**6.** In *Merrick's Estate*, 5 Watts & Serg. 9, 16–17 (Pa.1842), the Pennsylvania Supreme Court stated that "since the case of *Floyd v. Browne*, (1 *Rawle* 121), and *Marsh v. Pier*, (4 *Rawle* 273), it is not an open question in this State. A judgment for the value of the chattel is placed on the same footing as an *actual satisfaction*, and consequently d[i]vests plaintiffs' title." (Emphasis in original).

The Pennsylvania Supreme Court reexamined *Marsh v. Pier*, 4 Rawle 273 (1833), the decision relied on in *Merrick's Estate*, in *Linwood Harvestore, Inc. v. Cannon*, 427 Pa. 434, 437–38, 235 A.2d 377, 379–80 (1967). The court held that, in an action between the owner of a chattel and a person who had purchased the chattel from a converter, knowledge by the purchaser that the chattel had been converted was material in determining if the owner's prior unsatisfied judgment against the converter would bar the action against the purchaser. The court noted that *Marsh*, in the interpretation of the parties before the court in *Linwood Harvestore*,

establishes the proposition that the mere recovery of an assumpsit judgment against the convertor prohibits a subsequent action against the person who buys from the convertor. Although there is broad language in *Marsh* which would cover the instant case, *Marsh* was a case where the convert[e]r purported to act with authority from the owner, so that a suit in assumpsit could more readily be viewed as a ratification there.

It is not necessary, however, to determine at this time whether the above distinction between *Marsh* and the instant case controls. For we have no doubt that the rule in *Marsh* is to apply only where one of two innocent parties must suffer.

*Id.* at 437, 235 A.2d at 379–80. The applicability of *Marsh* to this case, in which both the converter and subsequent purchaser had knowledge of Dr. Baram's title, is thus somewhat unclear.

Nevertheless, Pennsylvania has recognized a distinction between obtaining a judgment and obtaining satisfaction for that judgment in the context of liability of joint tortfeasors, holding that satisfaction is necessary to bar subsequent suits against joint tortfeasors. *See Hilbert v. Roth*, 395 Pa. 270, 275, 149 A.2d 648, 649 (1959); *see also Frank v. Volkswagenwerk, A.G. of West Germany*, 522 F.2d 321, 326 (3d Cir. 1975) (applying Pennsylvania law); *Blanchard v. Wilt*, 410 Pa. 356, 360, 188 A.2d 722, 725 (1963). These decisions indicate that the Pennsylvania Supreme Court now generally looks more to actual satisfaction of claims than to mere rendition of judgment.

**7.** In 1865 an exhaustive review of the authorities by the Supreme Court noted the division of authorities on whether obtaining a judgment against the first converter precluded a subsequent action against a second converter. In *Lovejoy v. Murray*, 70 U.S. (3 Wall.) 1, 18 L.Ed. 129 (1865), the Court concluded that merely obtaining a judgment was insufficient to act as a bar, but that the judgment must be *satisfied* for the bar to operate. *Id.* at 17. Most American courts now require satisfaction of the conversion judgment before title is deemed to pass to the converter. *See, e. g., Largilhere Co. v. Kunz*, 41 Idaho 767, 771, 244 P. 404, 406 (1925); *Ledbetter v. Embree*, 12 Ind.App. 617, 618–19, 40 N.E. 928, 928 (1895); *Miller v. Hyde*, 161 Mass. 472, 474, 37 N.E. 760, 761 (1894); *John A. Tolman Co. v. Waite*, 119 Mich. 341, 342, 78 N.W. 124, 125 (1899); *St. Louis Fixture & Show Case Co. v. Woolworth Co.*, 232 Mo.App. 10, 27, 88 S.W.2d 254, 263 (1936); *Singer Mfg. Co. v. Skillman*, 52 N.J.L. 263, 264, 19 A. 260, 260–61 (1890); *Pierpoint v. Hoyt*, 260 N.Y. 26, 30, 182 N.E. 235, 236 (1932); *Backus v. West*, 104 Or. 129, 146, 205 P. 533, 539 (1922); *Pardee v. Nelson*, 59 Utah 497, 503, 205 P. 332, 334 (1922); *Jacob E. Decker & Sons v. Milwaukee Cold Storage Co.*, 173 Wis. 87, 98, 180 N.W. 256, 260 (1920).

39 (1969); *Druckenmiller v. Kuzenski*, 181 Pa.Super. 246, 248, 124 A.2d 141, 143 (1956).

Had there been no payment by the converter Fredella or acceptance by the owner, Dr. Baram, at least two subsequent and separate acts of conversion would have been committed by Farugia: receiving a chattel pursuant to an unauthorized sale on November 29, 1975, with intent to acquire for himself or for another a proprietary interest in it, and refusing to surrender the chattel on demand when requested by Dr. Baram on May 27, 1976. At a minimum, Hackett would have committed conversion when, with Farugia, he refused Dr. Baram's demand to surrender possession. *See Skubisz v. Gunther*, 62 Pa.Super. 487 (1916).

But before the analysis can proceed further, we must consider the effect of the acceptance by Dr. Baram of the payment of $3,000 by Fredella prior to his obtaining judgment against Farugia and Hackett. The district court found that "the value of the horse was $3,000 as of September 22, 1975, and of a similar value as of May 27, 1976," and that, since September 22, 1975, Dr. Baram was "the legal, lawful and rightful owner of the horse Foxey Toni and at all times lawfully entitled to possession and use of the horse." Record at 2–91, 2–90. We conclude that, under the circumstances presented here, the district court erred in these conclusions because of the consequences emanating from Fredella's prior payment.

■ On receipt by Dr. Baram of the $3,000 from Fredella, and acknowledgment that this sum reflected the true value of the horse, a common law forced sale was effected, passing title from the legal owner to the converter at the time and place of the original conversion. Had the converter made no offer of an amount reflecting the horse's value, and had Dr. Baram not received full value, he could have made out a conversion action against Farugia and Hackett. But the acceptance by Dr. Baram of the horse's true market value with the resultant passage of title in the nature of "a forced judicial sale" had the effect of vesting title in Fredella retroactively from November 29, 1975, the date of the conversion. *See Backus v. West*, 104 Or. 129, 146, 205 P. 533, 539 (1922). With title so vested, Fredella therefore had the right to transfer Foxey Toni on November 29, 1975, and Farugia, by the same reasoning, then took possession of the horse from a person legally entitled to possess and transfer. Dr. Baram retroactively lost his right to possession of Foxey Toni, and without a right of possession at the time of the alleged conversion could not maintain an action for conversion against Farugia and Hackett. *Cf. Commercial Banking Corp. v. Active Loan Co.*, 135 Pa. Super. 124, 131–32, 4 A.2d 616, 620 (1939) (plaintiff in conversion action must have had a right to possession at time alleged conversion occurred). Thus, although successive and independent actionable conversions of the same chattel are possible, satisfaction of the earlier conversion by payment in full of the value of the chattel acts as a complete bar to subsequent *recoveries*. The recovery from Fredella of $3,000 fully satisfied Baram's claim because it represented the true value of the claim as stated in the complaint and as found by the trial judge. *Frank v. Volkswagenwerk, A.G. of West Germany*, 522 F.2d 321, 326 (3d Cir. 1975) (applying Pennsylvania law); *Blanchard v. Wilt*, 410 Pa. 356, 360, 188 A.2d 722, 725 (1963); *Hilbert v. Roth*, 395 Pa. 270, 275, 149 A.2d 648, 652 (1959). We hold therefore that after receiving total satisfaction for the value of the chattel, Dr. Baram no longer possessed a common law cause of action in conversion for compensatory damages against Farugia and Hackett. The failure of his claim for compensatory damages also precludes his recovery of punitive damages, because under Pennsylvania law "[t]he right to punitive damages is a mere incident to a cause of action . . . and not the subject of an action in itself. . . [When the] plaintiff no longer has a cause of action of which his claim for punitive damages may be an element, that claim must fail." *Hilbert v. Roth*, 395 Pa. at 276–77, 149 A.2d at 652.

Accordingly, the judgment of the district court will be reversed and the proceedings

remanded with a direction to enter judgment in favor of the appellants.